MARGARET B. CONNOLLY, ADMINISTRATRIX,
OF THE ESTATE OF JOSEPH E. F. CONNOLLY
*vs.*
ARAM SERUNIAN.

Cumberland.     Opinion, September 17, 1941.

*Arthur D. Welch and Walter G. Casey*, for plaintiff.

*Harry C. Libby*, for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

HUDSON, J.   On exceptions to acceptance of referee's report. The action is on an "account annexed" wherein recovery is sought for services performed and disbursements made by Joseph E. F. Connolly as attorney for the defendant. It was brought by him, but upon his death his wife, Margaret B. Connolly, came in as administratrix to prosecute the action. The referee found for the plaintiff.

That the services were performed and disbursements made as set forth in the account is not denied. The only defense set up is the statute of limitations. Section 90, Chap. 95, R. S. 1930, provides:

"The following actions shall be commenced within six years after the cause of action accrues and not afterwards.

*       *       *

"IV. Actions of account, of assumpsit or upon the case, founded on any contract or liability, express or implied."

Section 110 of said Chap. 95 provides:

"If a person is out of the state when a cause of action accrues against him, the action may be commenced within the time limited therefor, after he comes into the state; and, *if a person is absent from and resides out of the state, after a cause of action has accrued against him, the time of his absence from the state, shall not be taken as a part of the time limited for the commencement of the action....*" (Italics ours.)

It is admitted that this action accrued on March 17, 1931. The writ dated September 29, 1939, there was an interim of eight years, six months, and twelve days from the accrual of the action to its commencement. The contention of the plaintiff is that during this period the defendant was absent from the state at two different times sufficiently long to prevent the operation of the statute. These absences were in Reno and Syria.

The purpose of the statute was early stated in *Crehore* v. *Mason*, 23 Me., 413, on page 416 as follows:

"Doubtless the mischief intended to be provided for was, that the statute would in certain cases commence running, while the holders of contracts could not commence suits upon them, or could not do it without being subjected to the inconvenience of doing it in another State."

And later, in *Drew* v. *Drew*, 37 Me., 389, on page 392:

"The object of this provision, obviously was, to prevent debtors, against whom the statute of limitations had begun to run, from departing from the State, and remaining abroad a sufficient length of time for the statute to run

out, and thus enable them to return and interpose this statute as a defence in bar."

Mere absence from the state is not sufficient. It must be accompanied by the establishment of a residence out of the state. *Drew* v. *Drew*, supra, on page 393. As stated in *Bucknam* v. *Thompson*, 38 Me., 171, on page 172, 61 Am. Dec., 237:

"In order to suspend the operation of the statute of limitations, after the cause of action has accrued, and the statute has begun to run, the person, who sets it up in defence, must not only be absent from, but reside without the State."

That the defendant was absent in Reno and in Syria is not controverted. The length of these absences, however, was in controversy as also whether a residence was established in either place. Although the referee made no special findings, necessarily he must have concluded that such residences were established. So far as the facts are concerned supporting his conclusions, his findings must stand if there is any credible evidence to support them.

The absence in Reno commenced shortly after an unsuccessful attempt by the defendant to obtain a divorce from his wife in Cumberland County. His son, witness for the plaintiff, testified that he did not believe his father remained in Portland, his then residence, after the divorce case in March, 1931. While there was some testimony from other witnesses (less likely to know) that he might not have departed until some two or three months afterwards, yet the record is sufficient to justify a finding by the referee that his then departure immediately followed March 17, 1931. The evidence as to the length of that absence was somewhat indefinite. It consisted of statements by witnesses that it was from six months more or less to a year. It the referee found that it was nine months, we think there was credible evidence for that finding.

The length of time he was in Syria was differently stated by

the witnesses. One said from one to two years, another about two years, and still another from June 29, 1936 to April, 1938. Although he applied for a passport on June 2, 1936, his son testified that he actually left Maine on June 29, 1936. The passport shows that he arrived back in the United States on December 7, 1937, so that he was out of this country, it would appear, one year, five months, and eight days. But it is not claimed that he then came to Maine. Just when is somewhat indefinite, the plaintiff claiming his arrival here might have been found to be as late as August 25, 1938, when the documentary evidence of a lease shows he was then in Maine, while the defendant contended he was here considerably earlier. The evidence does disclose that after his arrival in this country he went to Hartford, Connecticut, and conducted a business there for some months. A reasonable conclusion would be that he was absent from Maine from June 29, 1936 to sometime between March and August 25, 1938, and if it were to June 1, 1938, his absence on the Syrian trip would have been one year, eleven months, and two days in length.

As a consequence, if the referee found that he was absent in Reno nine months and in Syria one year, eleven months, and two days, he would have been out of the state two years, eight months, and two days, which would exceed the time of two years, six months, and twelve days, the period exceeding the six-year limitation from the time the action accrued to its commencement. Such an analysis would justify, so far as length of absence is concerned, the conclusion of the referee that the action was not outlawed.

But during these absences did the defendant establish residences? We repeat, the absence of the debtor must be more than a transient departure from his home on business or pleasure and a temporary sojourn out of the state. As used in this statute, the word "residence" is synonymous with "dwelling place" or "home"; such a residence must be in one place. The debtor cannot have a residence out of the state that will interrupt the running of the statute and at the same time have an

established residence or home within the state. *Drew* v. *Drew,* supra, on page 393. It is contended that after denial of divorce to him here in Maine he went to Reno to obtain one there. There was credible evidence in the case from which the referee properly could have drawn such an inference and have deduced that, that being his intention, he expected to and did establish a residence there for that purpose.

Having failed to obtain his divorce in Reno, he sought a separation in Syria. Counsel for the defendant claims that the record does not show that divorce proceedings were actually instituted either in Reno or in Syria, but that is not necessary, although probably there were such proceedings. The question is whether he established a residence for that purpose or any other. His son testified in answer to a question as to whether his father sought a divorce while in Syria, "Yes, sir."

So far as the record shows, when he left Maine, he severed on each occasion all home ties and even when he returned from Syria to this country he did not come to Maine for a while but established a business in Connecticut. These were facts properly for consideration by the referee and from which he could have found the establishment of residences both in Reno and in Syria.

The evidence also disclosed that on January 18, 1933 the defendant filed a petition in bankruptcy in the United States District Court, District of Maine, and that he was discharged in bankruptcy on October 27, 1933. It was claimed that the bankruptcy proceedings interrupted the running of the statute for that length of time, but that is not now necessary of decision here because that time is not required in addition to that spent by the absences above considered.

The exceptions also attacked certain rulings on admissibility of evidence. The defendant offered the testimony of the chief clerk of the municipal court for the City of Portland for the purpose of introducing original writs taken from the files and records of that court in three cases against the defendant by other parties than this plaintiff with the original returns of

service by the officers thereon to show that the defendant was then in Portland and was served with legal processes. The referee excluded these exhibits but informed the defendant's counsel that he could produce the officer who it was claimed served the writs. This was not done. We see no error in this ruling. If the officer had told a third party that he did serve writs on certain dates on this defendant, the third party could not testify to that fact because of the hearsay rule. The fact that a return of service was made makes it nonetheless hearsay so far as this action is concerned. Besides, a valid service could be made on a person temporarily in the state without any residence herein.

The defendant also offered in evidence a statement from the tax assessor's office in Portland showing that various parcels of real estate were assessed to the defendant from 1931 to 1939 inclusive. This evidence was excluded, and we think rightly. It does not appear that the defendant during those years was assessed as a resident or nonresident owner, and furthermore, it does not appear that the tax was paid. Cases cited by the defendant admitting facts of taxation on the question of residence were those where the taxes were paid. "The fact that one is assessed for purposes of taxation in a certain place does not give rise to any legal presumption that that place is his residence or domicile." Kennan on Residence and Domicile, page 96. Also see *Rockland* v. *Farnsworth*, 93 Me., 178, 44 A., 681; *Rumford* v. *Upton*, 113 Me., 543, at pages 545 and 546, 95 A., 226.

Also offered by the defendant was a certificate from the board of registration showing that the defendant was a registered voter in the City of Portland during the years 1931 to 1939 inclusive. This likewise was excluded. There was no evidence that, although registered, the defendant voted in Portland in any one of those years. The exclusion must be upheld. See *Somerville* v. *Smithfield*, 126 Me., 511, 140 A., 195; *Ellsworth* v. *Waltham*, 125 Me., 214, 132 A., 423; *Rumford* v. *Upton*, supra; *Monroe* v. *Hampden*, 95 Me., 111, 49 A., 604;

*East Livermore* v. *Farmington,* 74 Me., 154; and *Harpswell* v. *Phippsburg,* 29 Me., 313.

In conclusion we state that the decision of the referee appears to us to be founded on ample, credible evidence and so, in the absence of any errors of law, must be upheld. *Wentworth* v. *Whitney,* 133 Me., 513, 174 A., 461.

*Exceptions overruled.*