**Irene N. PATTEN**

v.

**Robert E. MILAM.**

Supreme Judicial Court of Maine.

Argued Sept. 20, 1983.

Decided Aug. 3, 1984.

Silsby & Silsby, Sandra Hylander Collier (orally), Leigh A. Ingalls, William S. Silsby, Jr., Ellsworth, for plaintiff.

Gross, Minsky, Mogul & Singal, George Z. Singal (orally), Bangor, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN, GLASSMAN, and SCOLNIK, JJ.

WATHEN, Justice.

Defendant Robert E. Milam appeals from a judgment of the Superior Court (Hancock County) entered after a jury verdict finding defendant liable for medical malpractice. This Court previously deferred decision on appeal and remanded for further hearing on the issue of the statute of limitations. *Patten v. Milam*, 468 A.2d 620 (Me.1983). The Superior Court having now ruled on the limitations defense, the matter is in order for appellate review. Defendant argues on appeal that the presiding justice erred in failing to dismiss plaintiff's action as barred by 14 M.R.S.A. § 753 (1980); in failing to dismiss for failure to serve written notice of claim pursuant to 24 M.R.S.A. § 2903 (Supp.1983–1984); and in denying defendant's motion for a directed verdict. We find no error and we deny the appeal.

### I.

The present action arose out of the alleged negligent treatment by defendant of plaintiff Irene Patten's dislocated toe during the month of September, 1977.

Plaintiff was injured at her home on September 9, 1977 when her daughter accidentally stepped on her left small toe causing the bone to "pop out" of place. Plaintiff was taken to the Maine Coast Memorial Hospital in Ellsworth where she was treated by defendant, a medical doctor. After diagnosing the injury as a dislocated compound fracture, defendant put the bone back into place, using his bare hands which plaintiff testified had not been washed. A physician's assistant sutured and bandaged the toe, gave the plaintiff a tetanus shot, and discharged her with a prescription for antibiotics. Two days later plaintiff returned to the hospital because the toe was red, swollen, leaking fluid, and causing pain. She was treated by a physician's assistant who took a culture and advised the plaintiff to see defendant the following Friday. When the plaintiff called the defendant's office the next day, however, she was told she could not see him until the following week on Tuesday, September 20, 1977. According to the plaintiff's own testimony, her toe remained red, swollen and painful, and continued to leak fluid during the period from September 11th to 20th.

Both plaintiff's testimony and defendant's notes concerning the return visit on September 20th indicate that defendant found no evidence of infection and considered the wound healed. Plaintiff left with instructions to put weight on her foot, and without any arrangements for further treatment or return visits except as needed. On September 22nd, plaintiff noticed red streaks running up her leg and went to another physician who administered three days of treatment for lymphangitis. About a month later, a third physician determined that she had a chronic dislocation and accompanying infection. After considering the various treatment options, plaintiff elected to have the toe amputated; an operation which was accomplished on November 3, 1977.

Plaintiff filed her complaint in the Superior Court on February 14, 1980, two years and five months after defendant treated her. After jury trial, judgment was entered on a verdict in favor of plaintiff in the sum of $10,500.00. Defendant appeals.

## II.

The procedural background relating to the issue of the limitations defense is adequately set forth in our earlier decision. On remand, the only evidence put before the court is the affidavit of defendant which is far from being conclusive. In essence, he confirms that he went to Texas in November of 1978 and that his family followed in mid-August of 1979—approximately one month before the expiration of two years from the date of plaintiff's treatment. Defendant also states that he rented a house in Texas until December of 1979 when he purchased a home, and that he did not sell his home in Maine until January of 1983. Finally, he states that he first voted in Texas in November of 1979 and registered his car in January of 1980. He concludes that he considered himself a resident of Maine until he purchased his house in Texas, two months after expiration of the two year period. The Superior Court justice concluded on remand that the statute of limitations was tolled pursuant to 14 M.R.S.A. § 866 (1980).

 Given the meager record before the Superior Court, it is apparent that the allocation of the burden of proof on the issue of tolling assumes substantial significance. A claim of noncompliance with a statute of limitations constitutes an affirmative defense under the express provisions of M.R.Civ.P. 8(c) which may be raised by motion to dismiss if the facts appear on the face of the summons and complaint. We readily conclude that the facial timeliness of a complaint falls within the ordinary rule that the party whom the rules of pleading charge with making an allegation is also charged with the burden of proving it. *See* 1 Field, McKusick & Wroth, *Maine Civil Practice* § 8.7 at 199 (2d ed. 1970).[1] The issue presented in this case is: who has the burden of proof when the issue of tolling has been generated by the plaintiff in response to a facial attack on the complaint? We conclude that, once generated, the burden of proof remains on the defendant to support all aspects of his affirmative defense. It is defendant's burden in this case to prove that in spite of his absence from the state, the statute did not toll.

 The allocation of the burden of proof has previously been decided on a case-by-case basis, and the decisions have reflected consideration of fairness and convenience. It is unnecessary to decide whether allocation of the burden of proof is within the power delegated by the rules enabling act and whether the Supreme Judicial Court exercised that authority in promulgating M.R.Civ.P. 8(c). The issue of tolling involves inquiry into a defendant's residence and changes in residence over a period of time. The relevant facts are peculiarly within the knowledge of the defendant, and considerations of fairness and convenience strongly support placing the burden of proof on the defendant once the issue has been generated. Once the plaintiff made a showing of the absence of defendant from the state, the burden was on defendant to prove that in spite of his absence the statute did not toll.[2] In this regard we adopt the rationale set forth in cases such as *Bott v. American Hydrocarbon Corp.*, 441 F.2d 896 (5th Cir.1971).

 Having fixed the burden of proof, it is apparent that the affidavit submitted to the Superior Court did not compel a finding that defendant was not absent from, and residing out of, the state. The findings of the Superior Court are not clearly erroneous and plaintiff's action is not barred by the statute of limitations.

1. The authors suggest: "It is plainly intended under the rules the burden of proving any one of the affirmative defenses listed under Rule 8(c) is upon the party required to plead it."

2. Our early opinion in *Drew v. Drew,* 37 Me. 389 (1854), does not establish a contrary rule. In that case the defendant sold plaintiff a promissory note of one Haynes, and by a separate writing promised to pay if Haynes did not before the note was "outlawed." On these unusual facts, this Court indulged in the presumption that after six years the note was barred and held defendant liable on his separate promise.

Finally on this issue, defendant argues that the enactment of the "long-arm" statute, 14 M.R.S.A. § 704–A (1980), repealed the tolling provision by implication. There is a substantial body of law in other jurisdictions which supports the proposition that notwithstanding a defendant's absence from the state, the limitations period is not tolled if he remains amenable to service of process under modern "long-arm" extensions of *in personam* jurisdiction. *See Annot.*, 55 A.L.R.3d 1158 (1974). Defendant argues on appeal that despite his absence from Maine he remained amenable to service of process by any one of three means: service in hand in Texas; by leaving copies at his dwelling house or usual place of abode in Maine with some person of suitable age and discretion residing therein; or, service by publication. The record in this case does not demonstrate that defendant's whereabouts in Texas were known or reasonably could have been known to plaintiff. Further, it is clear that defendant's family did not remain at his usual place of abode in Maine throughout the two year period following the accrual of plaintiff's cause of action. Thus we are left only with the possibility of service by publication pursuant to M.R.Civ.P. 4(g). Without suggesting what our ruling might be if another form of service had been available to plaintiff, we hold that the bare possibility of service by publication without the means of providing personal notification to defendant does not render the tolling provision inapplicable. *See Summerrise v. Stephens,* 75 Wash.2d 808, 454 P.2d 224 (1969).

### III.

Defendant also asserted as an affirmative defense plaintiff's failure to file a notice of claim pursuant to 24 M.R.S.A. § 2903.[3] Defendant clearly met the burden established in *Dougherty v. Oliviero,* 427 A.2d 487 (Me.1981), of pleading and proving noncompliance with the notice requirement. The parties stipulated that no notice of claim was ever served on defendant either before or after suit was commenced. Defendant seeks to argue on the basis of *Givertz v. Maine Medical Center,* 459 A.2d 548 (Me.1983), that dismissal is required where no notice of claim has been served within the period of the statute of limitations.

Our decision in *Givertz* was published after the trial was held in this case, and neither counsel nor the court had the benefit of having that decision in hand. Whether our opinion in *Givertz* would require the dismissal of plaintiff's action is not before us. Defendant failed to preserve that issue. Because he waived the notice requirement, he will not now be heard to complain. The presiding justice took the issue of notice under advisement at the beginning of trial. Before the case was submitted to the jury, the justice indicated to counsel that he was inclined to grant a stay of the proceedings for 90 days. At that point defense counsel acknowledged that "he would waive the notice requirement." In *Dougherty v. Oliviero,* 427 A.2d 487, 489 (Me. 1981), we held that failure to comply with section 2903 is an affirmative defense and is waived if not raised by the defendant. In *Givertz v. Maine Medical Center,* 459 A.2d 548, 554 (Me.1983), we described the statute as mandatory, although recognizing that the parties could waive its requirements. In the present case, defendant waived the requirements of the statute as surely as if he had failed to plead and prove it as an affirmative defense.

### IV.

Finally, defendant argues that he was entitled to a directed verdict because there

3. Section 2903 reads as follows:

 No action for death or injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced until at least 90 days after written notice of claim setting forth under oath the nature and circumstances of the injuries and damages alleged is served personally or by registered or certified mail upon the person or persons accused of wrongdoing. Any applicable statute of limitations shall be tolled for a period of 90 days from service of notice.

was insufficient evidence to establish a breach of the appropriate standard of care, and insufficient evidence to support a finding of a causal relationship between the treatment rendered by defendant and the infection of plaintiff's toe. In particular, he contends that expert testimony was required to meet plaintiff's burden of proof regarding both negligence and causation.

A medical witness testified that the standard of care applicable to this situation would require the attending physician to wash his hands with an antiseptic solution, put on sterile gloves, scrub the wound carefully for several minutes, and drape the toe with sterile material before setting the bone into place. In addition, he said the doctor should direct the patient to return for examination, prescribe antibiotics, and instruct the patient in the care of the fracture site. Plaintiff testified that defendant failed to wash his hands, use sterile gloves, scrub the wound, or instruct her in the proper care of her foot. Defendant argues that it was necessary for the medical witness to testify that such conduct would violate the standard of care. We disagree.

■■■ Although, ordinarily, expert testimony is required in medical malpractice cases to establish both the breach of the applicable standard of care and causation, this Court has recognized an exception to that rule "where the negligence and harmful results are sufficiently obvious as to lie within common knowledge." *Cox v. Dela Cruz*, 406 A.2d 620, 622 (Me.1979); *Cyr v. Giesen*, 150 Me. 248, 252, 108 A.2d 316, 318 (1954). This is just such a case. *See, e.g., Lanier v. Trammell*, 207 Ark. 372, 180 S.W.2d 818 (1944) (physician's failure to wash hands and to sterilize instruments before conducting eye operation held to constitute sufficient proof of negligence without the need for expert testimony); and other cases cited in *Cox*, 406 A.2d at 622 n. 1. There is sufficient evidence concerning defendant's actions from which the jury could conclude that he had breached the standard of care described by the medical witness. Similarly, the causal link be-

tween defendant's failure to take the usual precautions and an infection of the type contracted by the plaintiff is clear enough on this record to support a jury verdict for the plaintiff. Defendant's motion for a directed verdict, therefore, was properly denied.

The entry must be:

Judgment affirmed.

All concurring.