Madeleine **LEVASSEUR**

v.

Alvin **AARON.**

Supreme Judicial Court of Maine.

Argued Sept. 18, 1985.

Decided Feb. 3, 1986.

Grover G. Alexander (orally), Gray, for plaintiff.

Hunt, Thompson & Bowie, Marc V. Franco (orally), Rebecca H. Farnum, M. Roberts Hunt, Portland, for defendant.

McKUSICK, C.J., and NICHOLS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

NICHOLS, Justice.

The Plaintiff, Madeleine Levasseur, appeals from an order of the Superior Court (York County) granting the motion of the Defendant, Alvin Aaron, to dismiss her action against her dentist for negligence. She contends that the statute of limitations was tolled because the Defendant established a residence outside Maine and that, therefore, her action should not have been dismissed. We agree and vacate the judgment.

The Plaintiff alleges that the Defendant's malpractice occurred from 1978 to 1979. She filed her complaint with the court on November 8, 1982, exactly two years after achieving her majority. The Defendant, however, was then at his winter residence in Florida and therefore did not receive personal service of the summons, complaint, and statutory notice-of-claim [1] until July 7, 1983. After dismissal of the action on the Defendant's motion, the Plaintiff requested findings of fact and conclusions of law pursuant to M.R.Civ.P. 52(a), and the court complied.

The Defendant argues that the Plaintiff failed to serve the statutory notice of claim upon the Defendant within the two-year limitations period which governs medical malpractice actions. *See* 14 M.R.S.A. § 753 (1980); *Givertz v. Maine Medical Center,* 459 A.2d 548, 554 (Me.1983). The Plaintiff, however, asserts that the statute of limitations was tolled because the Defendant was "absent from and residing out of - the State" when the Plaintiff attempted to serve him with process. 14 M.R.S.A. § 866 (1980). She argues that dismissal is not warranted under the circumstances of this case.

■ At the threshold, we observe that when on a motion for dismissal matters outside the pleadings, such as affidavits, are presented to, and not excluded by, the court, the motion is treated as one for summary judgment and is disposed of according to Rule 56. M.R.Civ.P. 12; *see Maine Bonding & Cas. Co. v. Mahoney,* 392 A.2d 16 (Me.1978). Here, however, in addition to the Plaintiff's affidavit opposing the motion to dismiss, there was an evidentiary hearing. Thus it appears that the parties and the court tried the statute of limitations issue on the merits. *See* 6 *Moore's Federal Practice* ¶ 56.11[8] (2d ed. 1976). This was further evidenced by the fact that, at the Plaintiff's request, the court made findings of fact and conclusions of law.[2]

■ Because we are reviewing what we conclude to be a factual question, we look to see whether the court's findings of fact are clearly erroneous. We find the justice erred in concluding that the statute of limitations was not tolled because the Defendant had not established a residence outside

1. The notice-of-claim statute provides that:
   No action for death or injuries to the person arising from any medical, surgical or dental treatment, omission or operation shall be commenced until at least 90 days after written notice of claim setting forth under oath the nature and circumstances of the injuries and damages alleged is served personally or by registered or certified mail upon the person

   or persons accused of wrongdoing. Any applicable statute of limitations shall be tolled for a period of 90 days from service of notice. 24 M.R.S.A. § 2903 (Supp.1985–1986).

2. Specific findings of fact and conclusions of law are not necessary in the disposition of a motion for summary judgment. *See Stewart v. United States,* 716 F.2d 755, 766 (10th Cir.1982).

Maine. *See Patten v. Milam,* 480 A.2d 774, 776 (Me.1984). In *Patten,* the defendant admitted that he bought a house and registered to vote in Texas and that he no longer considered himself a Maine resident after purchasing the house in Texas. We concluded the defendant had established a residence outside Maine, thus tolling the statute of limitations. *Id.*

The present case is factually similar to *Patten.* The Defendant purchased a condominium unit in Florida in 1976. On March 15, 1982, he registered to vote in Florida. At the hearing he acknowledged that he considered himself a Maine resident until he registered to vote in Florida.

We have previously observed that a person can have more than one residence but only one domicile. *Margani v. Sanders,* 453 A.2d 501, 503 (Me.1982). The presumption that favors a person's original domicile as his legal domicile arises only when there is conflicting evidence as to intent. *Id.* In the instant case, however, we find no conflict in the evidence as to the Defendant's intent. He testified that he retired from practice in 1982; he registered to vote in Florida in March 1982, and had, in fact, voted in Florida; he had no plans for reregistering in Maine; he declared that the Florida home was now his major residence and he regarded himself as a resident of Florida and domiciled in that State. The evidence that he had continued to maintain a house in Maine to which he returned for several of the summer months of 1983 (after retiring from his practice and registering to vote in Florida) is not competent evidence to support the finding by the Superior Court that his domicile continued to be in the State of Maine. We consider these facts sufficient to toll the statute of limitations as of March 15, 1982. Therefore, the Superior Court's conclusion to the contrary was an error of law.

■ We turn now to examine the Defendant's contention that the Plaintiff failed to comply with the notice-of-claim requirements in light of our conclusion that the limitations period was tolled here. The Defendant contends that the Superior Court's dismissal of this case was proper. The statute requires a plaintiff, at least 90 days before commencing a malpractice action, to serve the defendant with a written notice-of-claim. 24 M.R.S.A. § 2903 (Supp. 1985–1986). The record shows that, although the Plaintiff's complaint was filed with the court on November 8, 1982, she did not serve the Defendant with notice-of-claim until July 7, 1983. The Plaintiff's action commenced on the day she filed her complaint. M.R.Civ.P. 3. She therefore violated section 2903 in that the notice-of-claim was served eight months after, instead of 90 days before, commencement of the action.

We must now determine whether dismissal of the Plaintiff's action was warranted under the circumstances. Section 2903, however, does not set forth sanctions for violations of its requirements. Dismissal is proper where, even though the underlying action was timely brought, the plaintiff fails to serve the notice-of-claim within the limitations period. *Givertz v. Maine Medical Center,* 459 A.2d at 554. We have already observed, however, that in this case the Defendant's establishment of a residence in Florida indefinitely tolled the statute of limitations. Accordingly, dismissal of this action was improper, since the notice-of-claim was served within the limitations period.

A 90-day stay of the proceedings, rather than dismissal, is appropriate in this case. *Dougherty v. Oliviero,* 427 A.2d 487, 489–90 (Me.1981). In *Dougherty,* we concluded that a stay was appropriate where the plaintiff's notice-of-claim was served within the period allowed by the statute of limitations but on the day after the defendant received the summons and complaint. *Id.* We reasoned that because section 2903 does not require the dismissal of premature complaints, a stay of the proceedings for 90 days best achieves the statutory purpose by providing time for settlement negotiations. *Id.* at 490.

Our reasoning in *Dougherty* is applicable to the present case as well. We note that although the complaint was filed eight months earlier, the Defendant received service of the summons, complaint, and notice-of-claim on the same day. We conclude that the action should not have been dismissed but should have been stayed for the statutory 90-day period.

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

VIOLETTE, WATHEN and GLASSMAN, JJ., concur.

McKUSICK, Chief Justice with whom SCOLNIK, Justice, joins, dissenting.

I would affirm the Superior Court's dismissal of this malpractice action.

My disagreement with the court's opinion involves a narrow and specific question: Did the Superior Court commit clear error in its factual conclusion, arrived at after a testimonial hearing, that Dr. Aaron continued through November 8, 1982,[1] to maintain his residence or domicil[2] in Maine? I recognize that the evidence presented to the hearing justice might have supported a factual finding that Dr. Aaron had become a domiciliary of Florida, but, on the other hand, the evidence at least equally well supported the justice's factual conclusion that Dr. Aaron had never abandoned his long-time domicil in the state of Maine. Most certainly, in light of the conflicting evidence he received on the factual issue, the hearing justice was not *compelled* to find that Dr. Aaron had moved his domicil to Florida before November 9, 1982. In this situation we cannot say that the justice's finding was clearly erroneous. *See Harmon v. Emerson*, 425 A.2d 978, 982 (Me.1981).

Among the evidentiary circumstances that support the hearing justice's finding that Dr. Aaron's domicil remained in Maine until after November 8, 1982, are the following facts. Dr. Aaron had practiced dentistry in Saco, Maine, for many years, maintaining his home at Fortunes Rock in Biddeford, Maine. In 1980 he went to Florida for the winter, returning to practice dentistry in Saco part time from April 1981 to October 1981. In the winter of 1981–82 he again went to Florida, and again the next spring returned to practice dentistry at the Sweetser Children's Home in Saco until time to return to the South in October 1982. At all times he maintained his Fortunes Rock home and physically lived there except for the winter months in Florida. When he was in the South, he left a Florida address for forwarding mail to him from Maine. There is no evidence that Dr. Aaron practiced his profession at all during his winter sojourns in Florida. These subsidiary evidentiary facts add up to highly competent evidence from which the justice charged with the factfinding responsibility was well justified in reaching his ultimate factual conclusion that Dr. Aaron had not changed his domicil out of Maine on or before November 8, 1982. *See* "Special Note on Evidence for Establishment of a Domicil of Choice," *Restatement (Second)*

---

1. November 8, 1982, is the critical date because the two-year statute of limitations applicable to medical malpractice actions, 14 M.R.S.A. § 753 (1980), expired on that day. If the statute of limitations was not tolled by Dr. Aaron's being both absent from Maine and a resident elsewhere on and before that date, the notice of claim, which was not served upon him until July 7, 1983, was not served within the period of limitations and therefore the Superior Court properly dismissed this malpractice action under the authority of *Givertz v. Maine Medical Center*, 459 A.2d 548, 554 (Me.1983).

2. Under 14 M.R.S.A. § 866 (1980), the residence outside of Maine that will, conjunctively with absence, toll the statute of limitations must be the equivalent of domicil, because as held in *Connolly v. Serunian*, 138 Me. 80, 84, 21 A.2d 830, 832 (1941), "such a residence must be in one place." Thus the terms "residence" and "domicil" will be used interchangeably in this opinion.

*of Conflict of Laws* following § 20, at 81–83 (1971).

Notwithstanding the hearing justice's finding as to Dr. Aaron's domicil, the court's opinion points to certain evidence that would justify a contrary factual conclusion. The recited evidence, however, far from *compelling* a finding of change of domicil, could properly be considered by the hearing justice to be outweighed by the evidence of the continuation of Dr. Aaron's strong and longstanding ties to Maine. Dr. Aaron bought his second home several years before he started spending his whole winter in Florida. While he registered to vote in Florida in 1982, there is no clear evidence that he in fact ever voted there prior to November 9, 1982, even though he may have voted in Florida after that date. Although Dr. Aaron testified that he thought that once he registered to vote in Florida he became a Florida resident, it was within the province of the justice who heard his testimony to assess whether Dr. Aaron's actions spoke louder than his words.[3] *Id.* at 82. I cannot agree with the court's declaration that, just because Dr. Aaron testified that he assumed he became a "resident of Florida" upon registering to vote in that state, there is in this record no conflicting evidence of Dr. Aaron's domiciliary intent. Testimony by the person whose domicil is the subject of judicial determination, even though admissible and sometimes highly persuasive, is never conclusive as to his intent. *Id.* The objective evidence presented to the Superior Court justice persuaded him by a preponderance that the mere registration to vote in another state did not change Dr. Aaron's Maine domicil, regardless what Dr. Aaron thought the consequence was. On the testimonial record before the trial court, no appellate court can say that that finding was error, let alone clear error.

The case at bar presents us with a situation radically different from that involved in our recent decision of *Patten v. Milam,* 480 A.2d 774 (Me.1984). First, the trial court in *Patten* decided the residence question solely on the basis of the affidavit of the defendant doctor, *id.* at 776; whereas here the trial court heard extensive oral testimony about Dr. Aaron's goings and comings between Maine and Florida. Second, the *Patten* decision in the trial court was rendered *against* the defendant doctor, who had the burden of proof to show that the statute of limitations was not tolled, and on appeal we held that the doctor's affidavit did not compel a finding of fact that he still had his domicil in Maine. *Id.* In contrast, here the trial court's finding of fact was *in favor of* the defendant doctor; the trial court was persuaded that the entire evidence satisfied the doctor's burden of showing that the statute of limitations had not been tolled, and certainly the record does not compel us to disagree.

Finally, examination of the record contradicts the statement of the court's opinion that the present case is factually similar to *Patten.* Dr. Milam, the defendant in *Patten,* was a full-time, active practitioner who moved the situs of his medical practice from Maine to Texas in November 1978. His family followed him to Texas after the end of the 1978–79 school year, and he actually voted and registered his car in Texas. He first rented and then purchased a home in Texas, and although he did not sell his Maine house until 1983, there is no suggestion in the *Patten* opinion that he ever occupied it for any appreciable time after his family joined him in Texas. In contrast to Dr. Milam, Dr. Aaron never moved his dental practice out of Maine and he never gave up physical occupancy of his long-time home at Fortunes Rock for more than the winter months. *Patten* is no au-

---

**3.** As it turns out, that particular testimony by Dr. Aaron is adverse to the position taken by Dr. Aaron's attorneys on the present tolling question; nonetheless, it was for the hearing justice to decide whether Dr. Aaron in testifying real- ized that particular adverse effect of his testimony and whether Dr. Aaron was motivated by tax or other considerations in registering to vote in Florida on March 15, 1982.

thority for the court's decision in the case at bar.

The function of this court in regard to a trial court's finding of fact is strictly limited to reviewing it for any clear error. M.R.Civ.P. 52(a). On the record before us, the hearing justice made no clear error, if any error at all, in finding that Dr. Aaron remained domiciled in Maine at least through November 8, 1982. I would affirm.