**Ralf SIEGEMUND, Special Administrator for the Estate of Joan L. Siegemund, et al., Plaintiffs,**

v.

**Peter SHAPLAND, et al., Defendants.**

**No. CIV.01–277–P–H.**

United States District Court,
D. Maine.

Feb. 26, 2004.

Thomas F. Hallett, Portland, ME, for Ralph Siegemund, Special Administrator for the Estate of Joan L. Siegemund, Ralf Siegemund, plaintiffs.

John S. Whitman, Richardson, Whitman, Large & Badger, Peter J. Detroy, III, Russell Pierce, Norman, Hanson & Detroy, Portland, ME, for Peter Shapland, Peabody & Arnold LLP, Ira Nagel, Greenbaum, Nagel, Fisher & Hamelburg, defendants.

## ORDER ON THE DEFENDANTS IRA NAGEL'S AND GREENBAUM, NAGEL, FISHER & HAMELBURG'S MOTION FOR SUMMARY JUDGMENT

HORNBY, District Judge.

The issue on this motion for summary judgment is whether Maine's statute of limitations has been tolled on charges against the guardian of a ward who died nine years before this lawsuit was filed. I conclude that the statute has run and the claims are barred.

### BACKGROUND

From 1987 to 1993, Joan Siegemund challenged the activities of two probate court-appointed guardians[1] of her aged mother, Dr. Rose Winston. In the probate courts of both Maine and Massachusetts, Siegemund fought each guardian's appointment, objected to their requests to sell property and sought to have them removed. She was always unsuccessful. Dr. Winston died in 1993. In 2001, Siegemund filed this lawsuit against Peter Shapland, the personal representative of her mother's estate, for various torts. On February 21, 2002, she amended her complaint to join as defendants Ira Nagel, guardian of the person, Stephen Howe, guardian of the property, and their respective law firms.[2] Both guardians and their law firms filed motions to dismiss. When Joan Siegemund died, her husband, Ralf Siegemund, personal representative of her estate, was substituted as plaintiff. In a February 25, 2003, Order, I concluded that Siegemund's claims against Stephen Howe, guardian of the property, and his law firm, were barred because his final accountings had been allowed by a Massachusetts probate court.[3] At that time, I denied personal guardian Nagel's motion to dismiss.

Discovery is now complete. Nagel and his law firm, Greenbaum, Nagel, Fisher and Hamelburg, have moved for summary judgment on all of Siegemund's claims.[4] Those claims are breach of fiduciary duty, negligence, and negligent and intentional infliction of emotional distress.[5] Nagel has advanced several arguments as to why Siegemund's claims against him fail, including the statute of limitations, laches, issue preclusion, and lack of standing or capacity. I conclude that all of Siegemund's claims against Nagel are barred by Maine's statute of limitations. Accordingly, I GRANT Nagel's motion for summary judgment.[6]

---

1. One guardian was for Dr. Winston (the person); the other was for her property.

2. The Amended Complaint also added as plaintiffs Joan L. Siegemund on behalf of the Estate of Rose Winston and the Estate of Rose Winston.

3. Mass. Gen. Laws Ann. Ch. 206, § 22 provides that a satisfactory accounting exonerates the accountant from liability unless the account is impeached for fraud or manifest error. By the time of my ruling in February 2003, Siegemund's time for appeal from the final accounting had expired.

4. The Amended Complaint does not make any independent claims against the law firm. Therefore, for the sake of brevity, I refer to the moving parties as "Nagel."

5. The Amended Complaint also alleges that Nagel violated Chapter 93A of the Massachusetts General Law (unfair trade practices). Siegemund has conceded, however, that this claim "does not survive." Opp'n Mot. at 16.

6. By virtue of this decision, Nagel's Motion to Amend Answer to Amended Complaint (Docket Item # 162) and Motion to Strike and Exclude Opinion Testimony of Calvin True, Esq.,

### ANALYSIS

In the February 25, 2003 Order, I concluded that Maine's statute of limitations applied to all of Siegemund's claims except for her claim that Nagel engaged in unfair trade practices in violation of Chapter 93A of the Massachusetts General Law. Order at 9. Siegemund is no longer pursuing the unfair trade practices claim. Opp'n Mot. at 16. Therefore, Maine's statute of limitations applies to all of Siegemund's remaining claims. Under Maine law, "[a]ll civil actions shall be commenced within 6 years after the cause of action accrues . . . ." 14 M.R.S.A. § 752 (2003).

Each of Siegemund's claims against Nagel arises out of decisions that he made as personal guardian regarding Dr. Winston's care. Thus, all of Siegemund's causes of action against Nagel accrued, at the latest, in 1993 when Dr. Winston died and Shapland was appointed as personal representative.[7] Unless there is tolling, the statute of limitations ran on Siegemund's claims against Nagel in 1999, three years before she filed this lawsuit against him. Siegemund advances several bases for tolling the statute of limitations. I will address each in turn.

### (A) Disability

■ Causes of action that accrue while a person is mentally ill are tolled until the "disability is removed." 14 M.R.S.A. § 853. Dr. Winston was suffering from mental illness when she died. Siegemund argues, therefore, that the disability was never "removed" and that the statute of limitations remains tolled. This tolling provision, however, clearly applies only to living people and was not designed to toll the statute of limitations in perpetuity.

### (B) Absence from the State

Siegemund argues that the statute of limitations has not run because Nagel resides in Massachusetts, not Maine. 14 M.R.S.A. § 866 provides:

> If a person is out of the State when a cause of action accrues against him, the action may be commenced within the time limited therefor after he comes into the State. If a person is absent from and resides out of the State, after a cause of action has accrued against him, the time of his absence from the State shall not be taken as a part of the time limited for the commencement of the action.

The purpose of this provision is to prevent potential defendants from escaping lawsuits by moving or remaining out of state while the statute of limitations runs. *See Connolly v. Serunian*, 138 Me. 80, 21 A.2d 830 (1941) ("Doubtless the mischief intended to be provided for [by section 866] was, that the statute would in certain cases commence running, while the holders of contracts could not commence suits upon them, or could not do it without being subjected to the inconvenience of doing it in another State."). The Law Court has addressed, but not decided, whether this provision applies in cases where the defendant's whereabouts are known, such that he or she is clearly amenable to service under Maine's "long-arm" statute. In *Patten v. Milam*, 480 A.2d 774, 777 (Me.1984), the court recognized that "there is a substantial body of law in other jurisdictions

---

and Paul Adler, M.D. (Docket Item # 111) are **MOOT**.

7. Siegemund suggests that the claims accrued no earlier than when Shapland was appointed as personal representative. Opp'n Mot. at 3.

Dr. Winston died on March 18, 1993, and Shapland was appointed on May 7, 1993. Pls.' SMF ¶¶ 2B, 7. Thus, regardless of whether Siegemund's claims accrued in March or in May, they accrued in 1993, nine years before Siegemund filed this lawsuit.

which supports the proposition that notwithstanding a defendant's absence from the state, the limitations period is not tolled if he remains amenable to service of process under modern 'long-arm' extensions of *in personam* jurisdiction." In *Patten*, however, the record did not show that the plaintiff knew where the defendant was residing. The court concluded, therefore, that "the bare possibility of service by publication without the means of providing personal notification to the defendant [did] not render the tolling provision inapplicable." *Id.* The court expressly reserved the question whether the tolling provision would apply if other forms of service had been available. *Id.*

In this case, there is no question that Nagel was amenable to service of process by means more effective than publication. Many of Siegemund's allegations concern Nagel's conduct as guardian during the time that Dr. Winston was a Maine resident. Maine's long-arm statute provides that a person who commits a tortious act in Maine or who causes "the consequences of a tortious act to occur" in Maine submits himself to the jurisdiction of Maine courts. *Id.* § 704–A(2)(B). Nagel traveled to Maine on several occasions, met with and discussed Dr. Winston's care with her primary care physician each time he visited, and ultimately determined that Dr. Winston should stay in Maine under the care of Audrey Pitman. Pls.' Response to Defs.' SMF ¶¶ 30, 34, 35. Thus, some of Nagel's decisions regarding Dr. Winston's care occurred while Nagel was in Maine. Even if Nagel's alleged breaches of fiduciary duty and other tortious acts occurred while Nagel was in Massachusetts, the consequences of those acts occurred in Maine, where the ward was living. Nagel was, therefore, amenable to personal juris-

diction under Maine's long-arm statute and there is ample evidence that Siegemund knew where he was.[8] *See Patten*, 480 A.2d at 777.

The majority rule is that tolling provisions similar to Maine's are inapplicable where the party raising the statute of limitations defense is amenable to personal jurisdiction. *See* Kenneth J. Rampino, Annotation, *Tolling of Statute of Limitations During Absence from State as Affected by Fact that Party Claiming Benefit of Limitations Remained Subject to Service during Absence or Nonresidence*, 55 A.L.R.3d 1158, 1974 WL 35088 (2002). Four years before *Patten*, the Law Court seemed to follow this majority rule when it concluded that a foreign corporation over which a Maine court could assert jurisdiction was not "absent" for the purposes of the tolling provision. *Willey v. Brown*, 390 A.2d 1039, 1042–43 (Me.1978). To the extent that Maine law on this issue is unclear, I conclude that Maine would follow the majority rule and decline to apply the tolling provision in a case such as this, where the defendant served as guardian of a Maine resident and was amenable to personal service.

### (C) Fraudulent Concealment

■ Finally, Siegemund argues that the statute of limitations was tolled due to fraudulent concealment. In Maine, an action that is fraudulently concealed by the defendant is timely if it is commenced within six years after the person entitled to bring suit discovers the claim. 14 M.R.S.A. § 859. To establish a claim of fraudulent concealment, the plaintiff must show: "(1) that defendants actively concealed material facts from [plaintiff] and that [plaintiff] relied on their acts and

---

8.  In the course of challenging Nagel's activities from 1987 to 1989, Joan Siegemund served motions upon Ira Nagel at his law firm's address, and received correspondence bearing that address. *E.g.*, Defs.' SMF, Exhibits N & V.

statements to her detriment; or (2) that a special relationship existed between the parties that imposed a duty to disclose the cause of action, and the failure of defendants to honor that duty." *Harkness v. Fitzgerald,* 701 A.2d 370, 372 (Me.1997). A fiduciary relationship, such as that of guardian to ward, is a "special relationship." *Brawn v. Oral Surgery Assoc.,* 819 A.2d 1014, 1026 (Me.2003).[9]

■ "When a plaintiff contends a genuine issue of material fact concerning the defendant's fraudulent concealment has been generated, the court assesses the facts against the elements of fraud ...." *Brawn,* 819 A.2d at 1026. The elements of fraud are: "(1) the making of a false representation; (2) of a material fact; (3) with knowledge of its falsity ...; (4) for the purposes of inducing another to act upon it; and (5) justifiable and detrimental reliance by the other." *Id.* When there is a "special relationship," failure to disclose may constitute the supplying of false information. *Id.*

Siegemund alleges that Nagel concealed or prevented the Siegemunds from obtaining various medical records of Dr. Winston, Pls.' Statement of Additional Facts ¶¶ 121, 123, 142, 147, 156, and forbade Dr. Winston's doctors to speak to the Siegemunds. *Id.* ¶ 118.[10] As record support for these allegations, Siegemund cites his own affidavit,[11] where he states:

- "Nagel in every way obstructed us from getting the medical record of Rose Winston at any time, but particularly for the period of time Dr. Rose Winston was in Maine." Ralf Siegemund Aff. ¶ 22.

- "On information and belief, Nagel has prevented Joan [Siegemund] from obtaining medical records ...." *Id.* ¶ 8.

- "To the best of my knowledge, we had no medical records from the time after the Bowser Order and to the death of Rose Winston. On information and belief, Nagel actually prevented us from getting said records." *Id.* ¶ 13.

- "On information and belief, [Rose's treating physician] was forbidden by Nagel to talk to Joan [Siegemund] and myself when we visited his office in 1992." *Id.* ¶ 19.

Nagel has filed a motion to strike each of these paragraphs on the ground that they are not supported by personal knowledge as required by Federal Rule of Civil Procedure 56(e). (Docket Item # 164). "It is apodictic that an affidavit ... made upon information and belief ... does not comply with Rule 56(e)." *Sheinkopf v. Stone,* 927 F.2d 1259, 1271 (1st Cir.1991). Even statements that purport to be based on personal knowledge may fail to satisfy Rule 56(e) if they are "too amorphous." *Id.* (citing 11 James Wm. Moore, et al., *Moore's Federal Practice* ¶ 56.14[1][d] (3d

---

9. Because Nagel had a fiduciary relationship with Dr. Winston, he had a duty to disclose to her any cause of action that she may have had. Siegemund does not allege, however, that Nagel concealed information from Dr. Winston, but rather that he concealed information from Joan and Ralf Siegemund. Whether Nagel had a "special relationship" with the Siegemunds, giving rise to a duty to disclose, is questionable. Even assuming the existence of such a relationship, however, Siegemund's claim of fraudulent concealment lacks evidentiary support.

10. Siegemund also states that the plaintiffs were unable to commence discovery "[d]ue to the impounding of the Probate Court file." Pls.' Additional SMF ¶ 119. Because Siegemund does not attribute the impounding of the file to Nagel, the statement is not relevant to the issue of Nagel's fraudulent concealment.

11. There are two Ralf Siegemund affidavits on record; one is dated November 21, 2003, the other is dated November 25, 2003. In his reply statement of material facts, Siegemund cites the November 25 affidavit. (Docket Item # 135).

ed. 1997) ("The affidavit, in addition to presenting admissible evidence, must be sufficiently specific to support the affiant's position.")). Paragraphs 8, 13, and 19 are based upon Ralf Siegemund's "information and belief." Paragraph 22 purports to be based upon personal knowledge, but refers to undefined events and lacks the specificity required to satisfy Rule 56(e). Accordingly, Nagel's motion to strike is GRANTED with respect to paragraphs 8, 13, 19, and 22 of the Affidavit.[12]

▮ Nagel admits that he denied many of Joan Siegemund's requests for her mother's medical records. Pls.' Response to Defs.' SMF ¶ 86. However, the withholding of information alone does not amount to fraudulent concealment. For concealment or failure to disclose to be fraudulent, the information withheld must be *material*. *Brawn*, 819 A.2d at 1026. In the context of fraudulent concealment tolling, the withheld information must comprise the facts upon which the lawsuit, at least in part, is based. *See* 14 M.R.S.A. § 859 (tolling available when a person liable conceals "the cause [of action]"). Nowhere does Siegemund identify which records were withheld or what specific information those records contained that was material to a cause of action against Nagel.[13] Moreover, Siegemund has acknowledged that he is not advancing a claim of medical impropriety. Opp'n Mot. at 6. Siegemund simply has not shown what the withheld medical

records contained that prevented timely filing of this lawsuit against Nagel. Siegemund, therefore, has not presented sufficient evidence to create a trialworthy issue of fraudulent concealment. I conclude that the tolling provision does not apply.

## CONCLUSION

The statute of limitations ran on all of Siegemund's claims against Nagel in 1999, three years before Siegemund filed this lawsuit. Because Siegemund does not advance any independent claims against Nagel's law firm, I assume that the complaint against the law firm is predicated on a vicarious liability theory and therefore dependent upon Nagel's liability. Nagel's and the law firm's motion for summary judgment is GRANTED.

**SO ORDERED.**

---

**12.** I have not considered any of the other paragraphs to which Nagel objects in the motion to strike because they are not relevant to the statute of limitations issue. Thus, the remainder of Nagel's motion is **MOOT**.

**13.** In his opposition motion, Siegemund says: "Although Joan Siegemund might engage in wild speculations, she could not actually assess the treatment of her mother. Absent medical or legal records, it was impossible for Joan Siegemund to obtain sufficient information upon which to bring an action until after

the statute of limitations ran." Opp'n Mot. at 5. Siegemund does not, however, identify what information in those records eventually alerted him and his wife to the fact that they had a cause of action against Nagel. Moreover, the assertion that Joan Siegemund was unable to assess the treatment of Dr. Winston without the records is belied by the fact that Ms. Siegemund, without the benefit of the withheld records, challenged Nagel's activities on many of the same grounds advanced in this lawsuit. *See, e.g.,* Defs.' SMF ¶¶ 56, 77.