STATE of Maine

v.

**Ronald K. AMES, Kenneth Bickford, Michael Fogg and John P. Schroeder.**

Supreme Judicial Court of Maine.

July 3, 1978.

Michael D. Seitzinger (orally), Asst. Atty. Gen., Augusta, Frank F. Harding, Dist. Atty., Rockland, for plaintiff.

Theodore H. Kirchner (orally), Clayton N. Howard, Damariscotta, for defendant.

1. Defendants were previously tried on the same charge in the Superior Court in March 1976. At that time, however, a mistrial was declared because one of the State's witnesses had violated an order for the sequestration of witnesses.

Before McKUSICK, C. J., and POMEROY, WERNICK, ARCHIBALD, GODFREY and NICHOLS, JJ.

WERNICK, Justice.

On November 20, 1975, defendants Ronald K. Ames, Kenneth Bickford, Michael Fogg and John P. Schroeder were charged by complaint in the District Court (Knox County) with "unlawfully to participat[ing] in a joint hunt for deer, wherein an effort was made to drive deer", in violation of 12 M.R.S.A. § 2462. Pursuant to M.Dist.Ct. Crim.R. 40 the cases were thereafter transferred to the Superior Court. Defendants were tried together before a jury and were found guilty as charged.[1] Defendants have appealed (by a single notice of appeal) from the judgments of conviction.[2]

We deny the appeal.

### 1.

Defendants contend that the statute under which they were charged, Section 2462 of 12 M.R.S.A., must be held void for vagueness, as violative of the due process of law guaranteed by the 14th Amendment to the Constitution of the United States and Article I, § 6–A of the Constitution of Maine. Specifically, defendants contend that the key concepts in Section 2462, "joint hunt" and "driving deer", are too vague to meet due process of law standards.

The contention fails. That the normative standard prescribed by a criminal statute may be imprecise does not render the statute unconstitutionally vague if the standard provides a person of ordinary intelligence comprehensibly fair notice of the nature of the prohibited conduct. *State v. Parker*, Me., 372 A.2d 570, 573 (1977); *S\*\*\*\* S\*\*\*\* v. State*, Me., 299 A.2d 560, 568 (1973). Here, even if there may be a degree of imprecision in the terms "joint hunt" and "driving deer", they are adequate to give a person of ordinary intelli-

2. Leanne Ames, the wife of defendant Ames, was also tried and convicted at the same time, but she is not a party to this appeal.

gence fair notice of the kind of conduct the statute prohibits. As commonly used and understood, a "joint hunt" signifies that two or more persons are engaging in the activity of hunting by acting concurrently and in conjunction with each other. This joint hunting activity may include either affirmative acts of pursuit or attempted pursuit of deer or more passive acts such as waiting "on stand." Moreover, the further provision of the statute that participation in a "joint hunt" becomes unlawful only if as an incident of it an "effort is made to drive deer" gives notice, by virtue of the specific statutory definition of "driving deer", that (1) at least one of the persons participating in the joint hunt must do an intentional act of pursuing, driving, chasing or otherwise causing deer to move in the direction of other persons, and (2) such persons must be "known [to the actor] to be waiting for the deer so pursued, driven or chased." Thus, the combination of meanings derived from common usage and the statute itself make abundantly clear to a person of ordinary intelligence the nature of the conduct which is rendered criminal. The statute, therefore, is not unconstitutionally vague.

### 2.

■ As another point of appeal, defendants argue that incriminatory statements of defendants Schroeder, Bickford and Fogg were admitted in evidence in violation of the rule requiring a prior showing of the *corpus delicti.*

*State v. Wardwell*, 158 Me. 307, 321, 183 A.2d 896, 904 (1962) states the *corpus delicti* rule as follows:

> "[I]t is a sufficient foundation for the admission of a confession or statement by the accused if the State at that time has presented such credible evidence as will create a really substantial belief that the crime charged has actually been committed by someone."

The standard contemplated resembles that connoted by "probable cause" to believe that the crime charged has been committed by some person. *State v. Atkinson*, Me., 325 A.2d 44, 45 n. 1 (1974).

■ Here, the evidence as to the relative positioning and activity of the defendants in relation to each other (described more fully *infra*) was "credible evidence" warranting a "really substantial belief" that the crime charged had been committed by some person.

### 3.

Defendants further assert that their timely motion for judgment of acquittal should have been granted because the evidence was insufficient to support conviction of the crime charged. The claim fails.

The evidence was as follows.

On November 15, 1975, Game Warden Supervisor John F. Marsh, while on routine patrol on East Sennebec Road in the Town of Appleton, noticed approximately seven individuals who seemed to form a group. They were dressed in orange hunting-type clothes and were carrying rifles. From a distance of about five hundred feet and for approximately five minutes Warden Marsh, using binoculars, kept the individuals under observation. He watched them as they first talked and gestured to each other and then spread out along the highway, taking positions approximately thirty yards apart. Soon thereafter they divided into two distinct groups, one on each side of the highway. Then, defendant Ames and one other individual left the highway and started to enter the woods. As Ames had reached a spot approximately twenty to twenty-five feet from the highway, Warden Marsh approached closely enough to speak with him. Ames told Marsh that it was his intention to proceed toward the St. George River which, on the side of the woods Ames had entered, ran behind the woods. Explaining further why he had entered the edge of the woods where he did, Ames stated that he had there observed what he believed to be deer tracks. The land being swampy, and Ames having only moccasins on his feet, Ames had concluded that he could not proceed farther, at that point, into the woods. While Warden Marsh was conversing with Ames they heard a shot in the direction of

the St. George River. Ames remarked that it "probably . . . was his wife target practicing."

Warden Marsh radioed to Warden John Crabtree informing him that a deer drive might be taking place in the area. While Warden Marsh was warning the group about driving deer, Warden Crabtree radioed back that he had come upon several individuals armed with rifles, and dressed in hunting clothes, "on stand" in the woods and fields near the St. George River. Among them were defendants Bickford, Fogg and Schroeder, Leanne Ames, the wife of defendant Ronald Ames, and another individual. These five were found spread some distance apart from each other, either sitting or standing in the woods or fields. Defendant Schroeder said that he was waiting for deer in the woods. Defendant Bickford claimed that he was waiting for his friends to come through the woods. Leanne Ames stated that she was waiting for her husband to come through the woods. Warden Crabtree ascertained that these five were facing in the direction of the highway from which Warden Marsh observed defendant Ames begin to enter the woods.

Section 2462 provides:

"It shall be unlawful to participate in a joint hunt for deer, wherein an effort is made to drive deer. 'Driving deer' is defined to mean the intentional act of pursuing, driving, chasing or otherwise frightening or causing deer to move in the direction of any person or persons known to be waiting for the deer so pursued, driven or chased."

Under this statute, participation in a joint hunt is not unlawful as such. The prohibition of the statute applies only if in the course of a joint hunt "an effort is made to drive deer." In the circumstances of this case, then, where three of the defendants were found to be merely "on stand", the convictions are sustainable only if the evidence is sufficient to warrant the conclusion

beyond a reasonable doubt that defendant Ames had actually begun an effort to drive deer. If so, all of the other defendants are guilty with Ames since the evidence supported a finding that they were participants in a joint hunt.

That defendant Ames had actually entered the edge of the woods moving in the direction of the St. George River in the vicinity of which the other defendants were "on stand", taken together with all of the other attendant circumstances shown, entitled the jury to conclude beyond a reasonable doubt that as a participant in a joint hunt for deer Ames had gone beyond mere preparation for an effort to drive deer and had actually started that effort.[3]

The entry is:

Appeal denied; each judgment of conviction is affirmed.

DELAHANTY, J., did not sit.

McKUSICK, C. J., and POMEROY, ARCHIBALD, GODFREY and NICHOLS, JJ., concurring.

---

**3.** At oral argument, defendants expressly waived another contention, asserted as a point on appeal, that the convictions constitute *de* *minimis* violations of the statute and as such should be set aside.