STATE of Maine

v.

Christopher FITCH.

Supreme Judicial Court of Maine.

Argued Nov. 22, 1991.

Decided Dec. 19, 1991.

Garry L. Greene (orally), Thomas Goodwin, Asst. Attys. Gen., Augusta, for plaintiff.

Alan G. Stone (orally), Clifford, Clifford & Stone, Lewiston, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN and COLLINS, JJ.

WATHEN, Justice.

Defendant Christopher Fitch, fifteen years old at the time of the offense, was tried as an adult and convicted in the Superior Court (Penobscot County, *Perkins, J.*) of the armed robbery and murder of Lucien Frechette. On appeal, defendant challenges, *inter alia*, the Superior Court's jury instructions concerning accomplice liability for murder, and the admission of prior consistent statements for the purpose of rehabilitating the credibility of an accomplice appearing as a witness. We agree that the Superior Court erred in both respects and we vacate the judgments.

On April 5, 1988, Lucien Frechette, an eighty-two-year-old man, was shot three times in the back of the head with a .22 caliber pistol at his farm in Norway. The next morning, his granddaughter discovered his body lying near a hay storage shed. Several neighbors later testified that they had heard shots at about 5:45 in the afternoon of April 5th, but had seen no one in the vicinity.

The police eventually focused their investigation on four teenagers: Christopher Fitch, Jay Snow, Wade Conley, and Shari Brown. Prior to trial, Shari Brown entered into a plea agreement with the State whereby she agreed to testify at the trials of Fitch, Snow, and Conley in exchange for prosecution as a juvenile. Her testimony established that on the afternoon of the murder, she and a friend had been driving around smoking marijuana with the three boys. They later returned to defendant's apartment, where she witnessed Snow showing defendant a gun and then putting it back in his pocket. At defendant's suggestion, the five then drove to Crockett Ridge Road "to get some money for drugs" from "an old man." Brown, the driver, pulled off the road opposite a driveway four houses below the Frechette residence.

While she and her friend waited in the car, the three boys walked up the road toward the Frechette house. She then heard two gunshots, after which she saw the boys walking quickly toward the car. Snow had a gun in one hand and a wallet in the other. After getting in the car, he said, "[L]et's get the hell out of here; I just shot the guy. I didn't mean to. It was an accident." On the way back to Norway, defendant rolled down the rear window and Snow threw out the gun and the wallet.

Defendant was charged by a juvenile petition in District Court and, after a hearing, bound over for trial as an adult.[1] Due to extensive publicity, venue was transferred to Penobscot County for trial. Defendant was tried along with Snow in a dual jury trial, while Conley was tried simultaneously in a separate courtroom. At trial, the State contended that defendant was liable for the robbery either as a principal or as an accomplice, but pursued the murder charge against him strictly on the theory of accomplice liability.

At the conclusion of the trial, the jury in defendant's case deliberated throughout an evening and the following morning, returning once for a readback of testimony and four times for reinstruction on accomplice liability. The jury eventually returned verdicts of guilty on both counts and defendant appeals.

*Jury instructions.*

Initially, the Superior Court instructed the jury appropriately with respect to accomplice liability for murder in accordance with 17–A M.R.S.A. § 57(3)(A) (1983):

A person is an accomplice of another person in the commission of a crime if:

A. With the intent of promoting or facilitating the commission of the crime, he solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime. *A person is an accomplice under this subsection to any crime the commission of which was a rea-*

---

1. Jay Snow and Wade Conley were also tried as adults and were acquitted.

*sonably foreseeable consequence of his conduct....* (emphasis added).

Essentially, the jury was instructed that defendant could be held liable for murder as an accomplice if he either (1) intentionally aided another person in committing murder or (2) intentionally aided another person in committing robbery and it was a reasonably foreseeable consequence that murder would result. The jury requested reinstruction on accomplice liability under this subsection four times, the last three times confining its request to the second alternative. When reinstructing the jury on the first three occasions, the court merely repeated the bare language of the statute and stated that accomplice liability would exist if "the commission of the murder was a reasonably foreseeable consequence" of defendant's participation in the robbery. On receiving the fourth request, the presiding justice advised counsel that he intended to instruct the jury that accomplice liability existed if it was a reasonably foreseeable consequence of defendant's conduct that the murder of Lucien Frechette could have occurred. Defense counsel objected to the word "could" as misleading and as suggesting "a small possibility," and requested adherence to the statutory language. Over objection, the presiding justice deviated from the language previously used, instructing the jury as follows:

> During the course of defendant's conduct in the participation of the offense of robbery was it a reasonably foreseeable consequence of that conduct that the murder of Lucien Frechette *could occur*? ... The commission of the murder, was it a reasonably foreseeable consequence of the defendant's conduct? (emphasis added).

Approximately an hour after being reinstructed, the jury returned a guilty verdict on the charge of murder.

■ An instruction is erroneous if it creates the possibility of jury confusion and a verdict based on impermissible criteria. *See State v. McKinney*, 588 A.2d 310,

312 (Me.1991); *State v. Huff,* 469 A.2d 1251, 1253 (Me.1984). Such an error is harmless only if the court believes it highly probable that it did not affect the verdict. *See McKinney*, 588 A.2d at 312; *Huff,* 469 A.2d at 1253–54. In the present case, the instruction on accomplice liability related to a central element of the crime charged. By modifying the language of the statute and the original instruction with the word "could," the court altered the nature of the consequence that must be reasonably foreseen in order to impose accomplice liability. The court diluted the requirements of the statute and permitted the jury to find guilt if the possibility of murder, rather than the reality of murder, was a reasonably foreseeable consequence of defendant's participation in the robbery. The phrase "reasonably foreseeable consequence" establishes the necessity for a causal relationship between defendant's conduct in the robbery and the consequent murder, and conveys its own degree of probability. In effect, the jury was erroneously instructed to determine the "reasonable probability" of a "possibility."

■ Because accomplice liability for murder under the second prong of section 57(3)(A) is predicated on a less culpable state of mind than required for the primary crime of murder, the court should adhere to the statutory framework.[2] *See State v. Ayers*, 433 A.2d 356, 364 (Me.1981) (the language of the statute "explicitly and amply defines the current law applicable to accomplice liability and provides a framework for the jury's instructions"). The deviation from the statute in this case resulted in a prejudicial misstatement of the law, requiring that the murder conviction be vacated.

### *Prior consistent statements.*

■ Shari Brown testified at trial and described defendant's involvement. In an effort to impeach her testimony, the defense introduced prior inconsistent statements in which Brown suggested that de-

---

**2.** We do not mean to suggest that the court could not have appropriately responded to the jury's request by amplifying the meaning of the phrase "reasonably foreseeable consequence" as an objective standard.

fendant was not involved in the offenses. The State attempted to rehabilitate her credibility by offering letters she had written to a jailmate containing statements consistent with her trial testimony.[3] Prior consistent statements are not admissible merely because the witness has been challenged with prior inconsistent statements. Under our rules, prior consistent statements are admissible "only to rebut an express or implied charge against [the declarant] of recent fabrication or improper motive." M.R.Evid. 801(d)(1). Such statements are admitted for their tendency to prove that an event allegedly providing a motive for falsification did not have that effect. Thus the trial testimony of the witness is made to appear "independent of the discrediting influence." 4 J. Wigmore, *Evidence* § 1128(1) (Chadbourn rev. 1972). Accordingly, in order to be admissible, such statements must have been made before the alleged improper motive developed. *See State v. Hebert,* 480 A.2d 742, 747 (Me.1984); *State v. Fredette,* 462 A.2d 17, 22–23 (Me.1983). In the present case, the Superior Court admitted the letters on the basis that they predated the July plea agreement, and that event provided the motive to fabricate. Defendant objected, arguing that the witness's motive to fabricate arose at a much earlier point in time. We agree.

■ In concluding that no discrediting influence developed before the witness entered into the plea agreement with the State, the Superior Court failed to consider the strong motive that any accomplice has "to screen himself and to secure the conviction of his companions." Wigmore, *supra,* § 1128(2). We agree with Dean Wigmore that an accomplice is "nearly always under a suspicion of discredit due to improper motives (or alleged improper motives) at the very outset" and that only rarely could prior consistent statements of an accomplice be free of the inherent discrediting influence of that status. *See id.* n. 2. This case presents no exception to that rule. The record demonstrates that Shari Brown had a motive to fabricate at least at the time of her arrest and may have had a motive at the moment she drove away from the scene of the crime. Her later letters afford no proof that her trial testimony was free of the discrediting influences resulting from her role as an accomplice.

The State warns that if motives in existence prior to a plea agreement are recognized, the rule admitting prior consistent statements will have limited application with respect to accomplices.[4] That is true, but it only bears out Dean Wigmore's observation that accomplices are nearly always under a suspicion of discredit.

Because we vacate both convictions, we have no occasion to address the remaining issues raised on appeal.

The entry is:

Judgments of conviction vacated; remanded to the Superior Court for further proceedings consistent with this opinion.

All concurring.

---

3. The letters admitted were written in June–July 1989 and conformed with Shari Brown's testimony that the three defendants were involved and that the motive for the robbery was to obtain money for drugs.

4. The State cites three federal opinions in support of its assertion that it is possible to admit a prior consistent statement made by an accomplice after arrest but prior to a plea agreement. *See United States v. Henderson,* 717 F.2d 135, 138 (4th Cir.1983), *cert. denied,* 465 U.S. 1009, 104 S.Ct. 1006, 79 L.Ed.2d 238 (1984); *United States v. Feldman,* 711 F.2d 758, 766 (7th Cir.), *cert. denied,* 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983); *United States v. Stuart,* 718 F.2d 931, 934–35 (9th Cir.1983). In these cases, the courts focused on the prospect of lenient treatment as providing the motives to fabricate, but provided no persuasive analysis and did not suggest that such discrediting motives can only arise when a plea agreement is achieved.