## STATE of Maine

v.

## Frederick O. RIVERS.

Supreme Judicial Court of Maine.

Argued Nov. 4, 1993.

Decided Dec. 6, 1993.

---

4. It was not disputed that the road in question was the Knudsen Road.

Stephanie Anderson, Dist. Atty., Jane Elizabeth Lee (orally), Asst. Dist. Atty., Portland, for the State.

Timothy E. Robbins (orally), Portland, for defendant.

Before ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

GLASSMAN, Justice.

Frederick O. Rivers appeals from a judgment entered in the Superior Court (Cumberland County, *Fritzsche, J.*) on a jury verdict convicting him of solicitation to commit murder, 17–A M.R.S.A. § 153 (1983).[1] We

---

1. 17–A M.R.S.A. § 153(1) provides:

 A person is guilty of solicitation if he commands or attempts to induce another person to commit murder or a particular Class A or Class B crime, whether as principal or accomplice, with the intent to cause the commission of the crime, and under circumstances which

agree with Rivers that the court erred in its instruction to the jury that the elements of the offense of solicitation need not occur simultaneously in the mind of the defendant and in its denial of Rivers' requested instruction on entrapment.[2] Accordingly, we vacate the judgment.

The record reveals the following: At the time of his arrest on March 25, 1992, Rivers was a guard at the Maine Correctional Center in Windham. Divorce proceedings, initiated by Rivers against his wife, and a charge of his assault of his wife were then pending in the District Court. Between December 13, 1991 and February 10, 1992, while Thomas Schmook was incarcerated in the federal wing of the correctional center awaiting trial on federal charges, he and Rivers became acquainted and discussed the marital problems that each was experiencing. Schmook testified on behalf of the State that these discussions progressed to the point that Rivers asked him to find someone to kill his wife. Rivers testified that at the time such conversations took place he desired the murder of his wife but did not believe that Schmook was actually capable of arranging the murder.

Before February 10, 1992 when Schmook was transferred from the correctional center to the Piscataquis County Jail in Dover–Foxcroft, he brought his discussions with Rivers to the attention of the authorities. On March 23, 1992, Schmook placed a telephone call to Rivers. The state police recorded and later transcribed this conversation. Schmook asked Rivers if he "still wanted to get that stuff done," to which Rivers responded affirmatively. When Schmook said he had a friend who could "take care of the stuff," Rivers supplied his wife's address. "Just do it, I'm gonna pay you for it," Rivers stated.

One day later, a state police detective placed a telephone call to Rivers, posing as the "hit man" selected by Schmook to commit the murder. This conversation was also recorded and transcribed. During this conversation, Rivers expressed reluctance to discuss matters on the telephone. But Rivers told the detective that he wanted the crime committed "as soon as possible" and stated, "I understand what you're saying" when the detective asked him if he realized that his wife would be "wiped out" and that "there's no changing your mind."

The court refused Rivers' request for a jury instruction on entrapment. During its deliberations, the jury sent the following written inquiry to the court: "Is it necessary for all these points which constitute solicitation to commit murder to exist in the Defendant's mind simultaneously?" The court consulted with the parties prior to responding to the jury's inquiry. The court responded to the inquiry by again instructing as to the "three points the State would have to prove beyond a reasonable doubt," and over the objection of Rivers, then stated: "So the question is must all of those three requirements exist in the Defendant's mind or in his actions simultaneously. The answer to that is no." The jury returned a verdict of guilty, and Rivers appeals.

## I.

 Rivers argues that the trial court committed reversible error in its answer to the question posed by the jury during its deliberations. An instruction that was the subject of a properly preserved objection is erroneous if it creates the possibility of jury confusion and a verdict based on impermissible criteria. *State v. Fitch,* 600 A.2d 826, 828 (Me.1991). The governing statute is unambiguous as to the criteria for a criminal conviction.

> No person may be convicted of a crime unless each element of the crime is proved beyond a reasonable doubt. "Element of the crime" means the forbidden conduct; the attendant circumstances specified in the definition of the crime; the intention,

the actor believes make it probable that the crime will take place.
Solicitation to commit murder is a Class A crime. § 153(4).

2. Contrary to Rivers' contention, our review of this record in the light most favorable to the State discloses that a rational factfinder could have found every element of the charged offense beyond a reasonable doubt. *See State v. Ho Tai,* 629 A.2d 594, 595 (Me.1993).

knowledge, recklessness or negligence as may be required; and any required result. 17–A M.R.S.A. § 32 (1983).

Noting that renunciation is an affirmative defense to a prosecution for solicitation,[3] the State contends that solicitation is therefore properly viewed as an ongoing criminal act that continues until the solicited crime takes place or the solicitation is renounced. The State argues that although there is a connection between all the elements of the charged offense, the instruction properly stated the law.

Section 153(1) requires not only that a defendant intend the solicited crime to occur, but also that the solicitation take place "under circumstances which the actor believes make it probable that the crime will take place." The purpose of this provision is to require "some element beyond mere verbal expression for there to be criminal liability." § 153 comment (1983).[4] Thus, to convict on a charge of solicitation of murder pursuant to section 153(1), the State must prove that there was some point in time at which the defendant had induced another to commit a murder, with the intent to cause the commission of the crime, and under circumstances that caused the defendant to believe it was probable that the solicited crime would take place. This comports with the general principles of criminal law. *See, e.g., United States v. Fox,* 95 U.S. 670, 671, 24 L.Ed. 538 (1878) ("[t]he criminal intent essential to the commission of a public offense must exist when the act complained of is done.").

■ We cannot agree with the State that this error was harmless when viewed in the context of all the instructions given to the jury. Although we review the jury instructions in their entirety when challenged on an appeal of a criminal conviction, *State v. Michaud,* 611 A.2d 61, 64 (Me.1992), we view a preserved challenge to a claimed erroneous jury instruction as harmless error only if it is highly probable that the error did not affect the jury's verdict. *Fitch,* 600 A.2d at 828; *see also* M.R.Crim.P. 52(a). The theory of Rivers' defense was that there was never a point in time when all three of the elements of solicitation were present. Rivers testified that although he solicited Schmook to cause the murder of Rivers' wife during Schmook's incarceration at the correctional center in Windham, it was under circumstances that Rivers did not believe made it probable that the crime would take place. Rivers further testified that by the time he believed as a result of the recorded telephone conversations in March that it was probable that the crime would take place, he no longer intended the murder to occur. As the factfinder, it was for the jury to believe or disbelieve Rivers' version of the events. This determination required that the jury have the correctly stated law to apply to the evidence presented to it. The trial court's response to the jury's inquiry was a prejudicial misstatement of the law, requiring that the conviction be vacated.

## II.

■ Rivers also argues that the trial court erred by refusing his request for an instruction on entrapment. We agree. We address the issue because of its factual relationship to the requirement that all elements of the crime of solicitation must converge at one point in time and of the probability of the

**3.** In a prosecution for solicitation, "it is an affirmative defense that, under circumstances manifesting a voluntary and complete renunciation of his criminal intent, the defendant prevented the commission of the crime solicited or of the crime contemplated...." 17–A M.R.S.A. § 154(2)(B) (1983).

**4.** The *Model Penal Code* adopts a different solution to the problem of solicitation that takes place under circumstances that make it unlikely the solicited crime will take place. The *Model Code* permits a court, when it finds that the solicitation was "inherently unlikely to result or culminate in the commission of a crime," to downgrade the solicitation to a lower punishment class or even to dismiss the prosecution "in extreme cases." *Model Penal Code* § 5.05(2) (1985). The drafters of the *Model Code* adopted this language to strike a balance between solicitation as "sufficiently indicative of a disposition towards criminal activity to call for liability" and the possibility that the solicitation statute could be improperly used to sanction speech that is merely inflammatory. *Id.* at § 5.02 comment at 366. We note that in adopting the additional element at issue in this case, the Maine Legislature appears to have crafted a stricter definition. *See id.* at 371 n. 24.

recurrence of this issue should disposition of this case involve a new trial.

■ The defense of entrapment has two elements: government action that induced the defendant to commit the crime, and a lack of predisposition on the part of the defendant to commit the offense. *State v. Davis,* 591 A.2d 1299, 1300 (Me.1991). "The evidentiary threshold required to generate the issue of entrapment is low.... If there is *any* rational support in the evidence for the defense of entrapment and the court fails to instruct the jury on that defense, it has committed reversible error." *Id.* Even unsubstantial evidence of entrapment necessitates the instruction. The test is whether the record provides evidence to warrant a reasonable hypothesis that an entrapment occurred. *Id.; see also State v. Bisson,* 491 A.2d 544, 547 (Me.1985) (evidence warranted an entrapment instruction when a defendant testified that police ordered him to move his car, thereby inducing him to drive while intoxicated); *State v. Lee,* 583 A.2d 212, 213 (Me.1990) (entrapment instruction appropriate when girlfriend of defendant was acting as a government informant when arranging for defendant to sell cocaine to undercover drug agents). When the issue of entrapment is properly generated by the evidence, the burden is on the State to establish beyond a reasonable doubt the absence of entrapment. *Davis,* 591 A.2d at 1300.

■ In the instant case, the State argues that there is no possibility of such a reasonable hypothesis that an entrapment occurred in light of Rivers' admission that he desired the murder of his wife before government agents became involved. There are two fallacies in this position. First, the question is not whether Rivers was predisposed to murder his wife or even to want another person to murder her, but whether he was predisposed to *solicit* her murder. Solicitation requires not only the intent that the solicited crime take place, but that intent must exist under circumstances which the actor believes make it probable that the crime will take place. Secondly, the State cannot defeat a defendant's request for an entrapment instruction merely by arguing that the defendant was predisposed to commit the crime.

It is a question of fact for the jury's determination whether at the time of inducement the defendant was predisposed to commit the offense. *Davis,* 591 A.2d at 1300; *see also Lee,* 583 A.2d at 214 (affirming a conviction by a properly instructed jury when prosecution proved the defendant's predisposition to traffic in cocaine).

Here, the jury as factfinders could determine that the government agents went beyond merely presenting an opportunity to commit the crime of solicitation, but actively sought to establish circumstances that would create the statutorily required belief in the mind of Rivers. Rivers presented testimony that the only point at which he believed Schmook was actually capable of arranging the murder was at the time of the recorded telephone conversations initiated by Schmook and the "hit man" while both were acting as government agents. This is sufficient to generate a reasonable hypothesis that an entrapment occurred and thus to warrant the requested entrapment instruction.

The entry is:

Judgment vacated. Remanded to the Superior Court for further proceedings consistent with the opinion herein.

All concurring.