2003 ME 7

**STATE of Maine**

v.

**Donald CLOUTIER et al.**

Supreme Judicial Court of Maine.

Argued: Sept. 9, 2002.
Decided: Jan. 21, 2003
(Revised Jan. 22, 2003).

David W. Crook, District Attorney, James G. Mitchell, Asst. Dist. Atty. (orally), Skowhegan, for State.

Peter B. Bickerman (orally), Verrill & Dana, L.L.P., Augusta, for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Donald Cloutier appeals from a judgment of conviction of one count of illegally transporting deer (Class E), 12 M.R.S.A. § 7458(11) (Supp.2002), two counts of guide license violation (Class E), *id.* § 7371–A(1) (1994), and three counts of driving deer (Class E), *id.* § 7458(10) (Supp.2002).[1] Herman Hoilman appeals from a judgment of conviction of two

1. The complaints allege that Cloutier committed the illegal transportation on November 26, 1999; the guide license violations on November 25 and 26; and driving deer on November 25, 26 and 27.

counts of hunting deer after having killed one (Class D), *id.* § 7458(2) (1994), two counts of guide license violation (Class E), *id.* § 7371–A(1), and two counts of driving deer (Class E), *id.* § 7458(10).[2] Convictions for Cloutier and Hoilman were entered after a jury trial in Superior Court (Somerset County, *Marden, J.*). Cloutier argues that he was entitled to a jury instruction on entrapment on the charge of illegal transportation. Cloutier and Hoilman assert that the statute defining "driving deer" is unconstitutionally vague. They also contend that the jury instructions defining "client" and "guide" were erroneous and that the evidence on several counts was insufficient. Because we agree that the evidence was insufficient to find Cloutier guilty on two counts of violation of guide license, we vacate the judgment against Cloutier on those two offenses, but we affirm the judgments against Hoilman and the remaining judgments against Cloutier.

## I. FACTS

[¶ 2] In the fall of 1999, the Maine Warden Service conducted an undercover operation at Gentle Ben's, a hunting lodge owned by Bruce Pelletier, a licensed Maine guide, in Rockwood Township. Game Warden St. Saviour, using an alias, stayed at Gentle Ben's during Thanksgiving week in November 1999. He paid Pelletier for a week of hunting. He had a hunting license, which allowed him to hunt bucks without a location restriction, and a permit to hunt antlerless deer in Wildlife Management District 8.

[¶ 3] St. Saviour and a number of people went hunting for deer on November 25 and 26. He testified that Pelletier was his primary guide. Hoilman, also a licensed Maine guide, was staying at another lodge owned by Pelletier and was guiding people at that lodge. Hoilman and one of his clients joined the hunting party on November 25 and 26. At trial, Hoilman testified that he was acting as a guide for his client on those days, but denied that he was guiding St. Saviour.. Hoilman had killed a buck earlier in the season and, therefore, was not entitled to hunt deer. Cloutier, another licensed Maine guide, also hunted with the group on the 25th and 26th, but he denied that he was acting as a guide. He was employed by Pelletier to drive trucks at the end of the hunting season, and he testified that hunting from Pelletier's lodge was part of his compensation for truck driving.

[¶ 4] On November 25 and 26 the group was hunting in Elm Stream Township in Wildlife Management District 4. The group members kept in contact with one another by radio. On November 25, Hoilman and Pelletier told some members of the group to move through the woods toward other members hunting from the opposite direction. Following these instructions, St. Saviour, Cloutier, and two or three others went with Pelletier, who lined them up approximately 200 yards apart along a road, and Hoilman took three of the hunters to another location. St. Saviour and those lined up along the road waited for about fifteen minutes, when Pelletier radioed them to start moving on a particular compass heading toward Hoilman, which they did. Later that day, Hoilman and Pelletier had three of the hunters line up on a ridge and push toward other members of the party. A third and similar push by members of the group, including Cloutier, toward other members took place before the group headed back to the

---

**2.** The complaints allege that Hoilman committed a guide license violation, driving deer, and hunting deer after having killed one on November 25 and committed the same three offenses again on November 26.

lodges for Thanksgiving dinners. On November 25, none of the members of the hunting party shot a deer.

[¶ 5] On November 26, following Hoilman's suggestion, two people stood at a deer crossing, and the other party members, including St. Saviour and Cloutier hunted toward them from two different directions. Pelletier notified the hunters by radio when to start moving toward the hunters that were standing. After St. Saviour had been walking for a while, Hoilman notified him and the others that he had just jumped a big buck. Pelletier then repositioned some of the hunters so that they were standing at a certain location and the others would move toward those standing. After one of the hunters thought he had wounded a deer, the group members were repositioned again. At Pelletier and Hoilman's direction three of the hunters stood while the others hunted toward them. While the movements of the hunting party on November 25 and 26 were coordinated, the group did not use noisemakers or dogs. Hoilman carried a gun with the group on both days.

[¶ 6] On November 26, St. Saviour killed an antlerless deer that he thought was wounded. He was the only member of the hunting party who killed a deer. Pelletier and Hoilman gutted the deer, and Pelletier informed the group that they had to be careful because the deer was killed in the wrong district. St. Saviour's permit for an antlerless deer was limited to District 8. Cloutier asked Pelletier if he wanted help dragging the deer out, but Pelletier declined. Pelletier and St. Saviour dragged

the deer out to a road and placed it behind a blowdown. St. Saviour testified that at the time the deer was being transported out of the woods it was not tagged.[3] They met up with the rest of the party and discussed how to get the deer to District 8, on the other side of the Golden Road. The group agreed to put the deer in Cloutier's truck, and Pelletier went to the Golden Road and radioed the group when it was safe to transport the deer. Cloutier then drove his truck with St. Saviour and another member of the group as passengers, with the deer, to a tagging station for District 8.

[¶ 7] November 27 was the last day of hunting season, and a group which included Cloutier and St. Saviour, but not Hoilman, went hunting. Pelletier drove St. Saviour, Cloutier and others to the location for hunting and let the hunters out one at a time along the road. The group had decided to hunt up and over a ridge toward a lake where two of the hunters would be situated. After they received word on the radio from Pelletier, they headed over the ridge. No one shot a deer that day.

[¶ 8] Hoilman and Cloutier were tried together along with three other defendants, and all five were found guilty of all offenses that were submitted to the jury.[4] Only Hoilman and Cloutier have appealed their convictions.

## II. DRIVING DEER

■ [¶ 9] Between them Hoilman and Cloutier were charged with five counts of

3. The deer tag is a portion of the hunting license. 12 M.R.S.A. § 7457(3) (Supp.2002). A hunter is required to attach the tag to the deer in order to possess it or leave it in the fields or forests prior to registering it. *Id.* § 7458(6).

4. Hoilman received consecutive jail sentences on the two Class D charges of hunting deer after having killed one totaling ten days in

addition to a $1000 fine plus surcharges on each charge. On the remaining Class E offenses the court imposed fines totaling $1500 plus surcharges. Cloutier was sentenced to pay fines totaling $1000 plus surcharges on the two guide license violations and $1000 in fines plus surcharges on the other four offenses.

driving deer. They contend that the statute is unconstitutionally vague. At the time of their offenses, the statute read: "A person is guilty of driving deer if that person participates in a hunt for deer, during which an organized or planned effort is made to drive deer." [5] 12 M.R.S.A. § 7458(10) (1994). The statutory definition for driving deer provides: "To 'drive deer or moose' means an organized or planned effort to pursue, drive, chase or otherwise frighten or cause a deer or moose to move in the direction of any person or persons who are part of the organized or planned hunt and known to be waiting for the deer or moose." 12 M.R.S.A. § 7001(6) (1994).

[¶ 10] We have rejected a challenge, on vagueness grounds, to the constitutionality of a previous statute that made driving deer a crime. *State v. Ames*, 388 A.2d 94, 96 (Me.1978). We said that the statute was "adequate to give a person of ordinary intelligence fair notice of the kind of conduct the statute prohibits." *Id.* at 95–96. Although the statute under attack in this case differs from the statute at issue in *Ames*, the differences between the two statutes are not significant.

[¶ 11] A statute survives a vagueness challenge if it gives ordinary people notice of what conduct is prohibited, does not require them to guess at its meaning, and does not encourage arbitrary and discriminatory enforcement. *State v. McLaughlin*, 2002 ME 55, ¶ 9, 794 A.2d 69, 72. Even more explicitly than the statute in *Ames*, the version at issue here plainly tells people that if they participate in a group hunt and they organize or plan the

hunt so that several people move in a coordinated fashion toward other members of the hunting party who by predesign are standing or moving toward the first group, in a planned effort to flush out the deer, they are hunting illegally. This is precisely what the evidence demonstrated in this case. Section 7458(10) is not unconstitutionally vague.

## III. ENTRAPMENT

[¶ 12] Cloutier requested an entrapment instruction on the offense of illegal transportation, but the court declined to give it. An entrapment instruction is required whenever the evidence generates the issue of entrapment, and the evidentiary threshold is low. *State v. Audette*, 2002 ME 87, ¶ 10, 797 A.2d 742, 745. The issue of entrapment is generated whenever there is evidence that government action induced the defendant to commit the crime and that the defendant was not predisposed to commit the crime. *State v. Rivers*, 634 A.2d 1261, 1265 (Me.1993).

[¶ 13] Cloutier argued that St. Saviour's act in shooting an antlerless deer outside of District 8 was unlawful and that by his unlawful action St. Saviour created a situation in which Cloutier assisted him in illegally transporting the deer. There was evidence that St. Saviour shot a deer illegally but no evidence that St. Saviour requested Cloutier to transport the deer. Although St. Saviour may have created the opportunity for Cloutier to commit the illegal transportation violation, we have said that more is required for the entrapment

---

5. The statute was subsequently amended to read: "Except as provided in subsection 15, paragraph I, a person is guilty of driving deer if that person participates in a hunt for deer, during which an organized or planned effort is made to drive deer." P.L. 1999, ch. 588, § 1 (effective Aug. 11, 2000) (codified as 12 M.R.S.A. § 7458(10) (Supp.2002)). The referenced subsection and paragraph state "Notwithstanding subsection 10, 3 or fewer persons may hunt together as long as they do not use noisemaking devices." *Id.* § 2 (codified as 12 M.R.S.A. § 7458(15)(I) (Supp.2002)).

defense than providing the opportunity to commit the crime. *State v. Davis*, 591 A.2d 1299, 1300 (Me.1991) (holding that game warden's placement of plywood deer silhouette after sundown which defendant shot at was not sufficient inducement for entrapment defense to night hunting). Because there was no evidence that St. Saviour induced Cloutier to commit the offense of illegal transportation, he was not entitled to an entrapment instruction.

## IV. GUIDE LICENSE VIOLATION

[¶ 14] Cloutier and Hoilman were charged with knowingly assisting a client in violating the fish and game laws. Cloutier and Hoilman argue that the court's instructions defining "guide" and "client" were misleading. The court instructed the jury that "guide means any person who receives any form of remuneration for his services in accompanying or assisting any person in the fields, forests, or on the waters or ice within the jurisdiction of the State while hunting, fishing, trapping, boating, snowmobiling, or camping at a primitive camping area." This definition comes straight from 12 M.R.S.A. § 7001(13) (1994).

[¶ 15] At the conclusion of the instructions counsel for the defendants made several requests of the court, including a request for the definition of "client," and specifically referred to the definition in *State v. Burnham*, 654 A.2d 434, 435 (Me. 1995). In response to Hoilman and Cloutier's request, the court instructed the jury, "You remember I gave you the definition of a guide and guiding, a guide being defined as a person receiving a form of remuneration for services in accompanying or assisting any person while hunting. Thus, a client would be the person who was so accompanied or assisted." No objection was made by Hoilman and Cloutier to this instruction, which was essentially identical to the definition stated in *State v. Burnham*, 654 A.2d at 435.

[¶ 16] Hoilman and Cloutier point out that there was no evidence that St. Saviour paid them directly for guide services. St. Saviour paid Pelletier. Hoilman and Cloutier now argue that it was obvious error for the court to fail to further instruct the jury that a client is one who paid some form of remuneration to the guide. We find no error in the instruction as it was given by the court. The statutory definition of guide does not restrict that term to a person accompanying or assisting others who themselves pay remuneration to the guide. When a third person pays a form of remuneration to a guide to assist a client, the guide comes within the definition of section 7001(13).

[¶ 17] Hoilman and Cloutier also contend that the evidence was insufficient for the jury to find beyond a reasonable doubt that they were guiding St. Saviour or members of the hunting party. There was evidence that Hoilman had been employed for his guiding services by Pelletier during hunting seasons for the past several years and for the 1999 season. Furthermore, there was sufficient evidence that on November 25 and 26, 1999, Hoilman, in the employ of Pelletier as a hunting guide, accompanied a group of hunters, including St. Saviour, and performed guide services for the group. Although Hoilman may have been the primary guide of another hunter and staying at another lodge, the evidence was that he fully participated in directing and assisting other hunters. Because Hoilman directed and accompanied the hunters in driving the deer and because he was employed by Pelletier to provide guiding services, there was sufficient evidence to find that Hoilman was guilty of violating his guide license by

knowingly assisting clients to violate the fish and game laws.

[¶ 18] Cloutier also accompanied several hunters in driving deer on November 25 and 26.[6] He contends that there was no evidence that he received any remuneration for guiding services for those dates. Indeed, the only evidence of remuneration is that he was employed by Pelletier as a truck driver and as part of his remuneration for truck driving, he was invited to stay at the lodge and go hunting with Pelletier's hunting party. A guide, however, is a person who receives remuneration "for his services *in* accompanying or assisting any person in the fields ... while hunting ...." 12 M.R.S.A. § 7001(13) (emphasis added). There was no evidence that Cloutier received remuneration for guiding services; thus, the evidence was insufficient to find that Cloutier met the definition of guide on November 25 and 26.[7]

[¶ 19] Hoilman and Cloutier raised additional challenges to the jury instructions and the sufficiency of the evidence but none merit discussion.

The entry is:

Judgments as to Hoilman affirmed. Judgments of conviction as to Cloutier on Counts II and III are vacated; judgments as to Cloutier on all other counts are affirmed.

---

6. Although Cloutier was charged with driving deer on November 27, he was not charged with knowingly assisting a client to violate the fish and game laws on that date.

7. In its brief, the State argues that both Hoilman and Cloutier were employed by Gentle Ben's as registered Maine Guides for the 1999 hunting season. Unlike the other factual statements in its brief, the State does not provide a transcript citation for this allegation, and our independent review of the transcript does not reveal any support for this assertion.