STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss                                    CIVIL ACTION
                                                  DOCKET NO. CV-03-234

                                                  TEH-CUM-7/05/05

D. BRYAN BURNS,

                           Plaintiff

        v.                                        ORDER ON CROSS-MOTIONS
                                                  FOR SUMMARY JUDGMENT

CARIBBEAN VILLAS & RESORTS
MANAGEMENT, INC., RICHARD CLARK,
DIANE JANNELLE and TERRI HANSEN,

                           Defendants


        This matter is before the court on (1) the plaintiff's Motion for Summary

Judgment on Counts I and IV of the Second Amended Complaint and on Counts I

through V of the Counterclaim; (2) the defendants' Motion for Summary Judgment

on Count V of the Second Amended Complaint; and (3) the defendants' Motion for

Summary Judgment on Counts I and II of the Counterclaim.

                                   BACKGROUND

        Except where noted, the following facts are undisputed:   In 1989, the

defendant Richard Clark (Clark) owned 15% of Culberson Development, Co., an

entity that built and managed property on the island of St. John in the United States

Virgin Islands.  At that time, Clark was presented with the opportunity to acquire

CDC Management Co. (CDC), the part of Culberson Development, Co. that

                                         1

managed rental properties on St. John. Clark approached the defendant Diane Jannelle and the plaintiff Bryan Burns, together with Myrtle Barry who is not a party to this action, about participating in the purchase of CDC. Jannelle in turn invited the defendant Terri Hansen to invest and participate in the business.

Before entering into the purchase transaction, the plaintiff and the defendants discussed their plans for the business and the transactional documents that would be involved. There is a dispute as to whether the individual investors agreed that there would be no opportunity for passive investment in the company and that each would be actively working for the company. The plaintiff alleges that the defendants knew his involvement would be limited.

Prior to 1990 and the purchase of CDC, the plaintiff was engaged full-time in the operation of Travel Trading Company (TTC), a wholesale travel company that he started. TTC marketed properties handled by various management companies, including, but not limited to CDC. The parties dispute whether the plaintiff worked full-time for TTC after 1990.

On May 5, 1990, the plaintiff, the defendants Clark, Jannelle, and Hansen, and Myrtle Barry signed a Stock Purchase Agreement to acquire CDC. Pursuant to that agreement, the plaintiff and the defendants purchased 750 shares of CDC. The plaintiff paid $10,000.00 and was issued 200 shares. The plaintiff alleges that the $10,000.00 constituted full consideration for his shares. The defendants, however,

2

allege that the purchase price for 200 shares was $23,000.00 and that the purchasers "collectively agreed that the balance due the seller [of CDC], David Culberson ($46,250.00 over five years) would be paid by the corporation for the benefit of the individual investors provided they remain contributing members of the company throughout that period." Defs' Reply S.M.F. ¶ 1 in Support of Defs' Mot. Summ. J. on Count V. The defendants further allege that the plaintiff did not remain a contributing member throughout the repayment period.

The only consideration referred to in the Stock Purchase Agreement is that owed to Mr. Culberson. The Stock Purchase Agreement contains an integration clause stating that it is the entire agreement relating to the subject matter therein.

In addition to the Stock Purchase Agreement, the purchasers also signed a Shareholder's Agreement in May 1990. The Shareholder's Agreement also contains an integration clause. However, it is silent as to any consideration owed by any shareholder.

The Shareholder's Agreement does, however, contain several other provisions at issue in this case. The first is Section 6, entitled "Sale of Stock Procedure," which provides that a "shareholder desiring to sell his or her stock . . . shall notify the President," and designate an appraiser. Clark Aff. Exh. A. Within ten days, the corporation is required to notify the shareholder desiring to sell his or her stock of the corporation's designated appraiser. The two designated appraisers

3

are to then select a third appraiser and the three appraisers are determine the fair market value of the shares as of the date of the appraisal. In the event the "corporation declines its right to purchase, the shares shall be offered to the original shareholders, than [sic] to other shareholders, than [sic] to the general public." *Id.*

The second provision at issue in this case is Section 7, entitled "Sale of Stock on Termination of Employment," which provides in relevant part:

> At the termination of employment by the corporation of any shareholder who is also an employee (S/H employee) whether the termination is compelled by the corporation or voluntary, it shall be mandatory for such S/H employee to offer for sale to the corporation all of his or her stock in the company. . . . If the Corporation does not exercise their right to purchase under the terms of this Agreement, the holder may sell or foreclose such shares without regard to this agreement.
> ...
> If the termination is involuntary and occurs after 1 (one) year from the date of this Agreement, or anytime a voluntary termination occurs, the purchase price for the stock shall be its fair market value as of the date of termination. If the parties are unable to agree on the fair market value of the stock, such fair market value shall be determined in . accordance with Section 6 of this Agreement and payment shall be made in keeping with said Section 6, unless otherwise mutually agreed upon.

*Id.*

The third provision is Section 4, entitled "Noncompetition Agreement." It provides:

> So long as we remain shareholders of the Corporation, we shall not become interested, directly or indirectly, either as an employee, owner, partner or agent or as a shareholder, director or officer of any

4

business engaged in a business similar to that of the Corporation and operation in the U.S. Virgin Islands.

...

Travel Trading Company, a Massachusetts corporation doing business in the U.S. Virgin Islands as a travel wholesale company shall not be considered to be a business engaged in a business similar to that of the Corporation for the purposes of this section.

*Id.*

At an organizational meeting of the Board of Directors of CDC held over the course of several days from May 4-8, 1990,[1] the Board agreed that the plaintiff would be the director primarily responsible for developing new markets and marketing techniques. The parties dispute whether the Board specified the strategies the plaintiff would employ and the tasks he would perform to carry out his duties. The plaintiff alleges that he had considerable discretion in selection of strategies and tasks while the defendants assert that the Board specified in detail the strategies he would employ and the tasks he would perform.

The defendants allege that plaintiff was paid $20.00 per hour for sales and marketing techniques and an hourly rate for desktop publishing and graphic design work. The plaintiff, however, counters that it was initially understood that he would receive no compensation because he was not to be a "day to day" participant in corporate affairs but that he would receive dividends when the company became profitable. The plaintiff further asserts that he ultimately received non-employee

---

[1] It was during this time that the Stock Purchase Agreement and the Shareholders Agreement were signed.

compensation and cites to the testimony of the defendants in which they concede that $20.00 per hour was inadequate for the services the plaintiff provided.

In May 1990, Jannelle and Hansen wrote to the plaintiff instructing him that he would not receive a salary because only other shareholders who provided "day to day" services were to receive compensation, while the remaining shareholders, who at that time included the plaintiff and Clark, were to be paid in the form of dividends. The defendants assert that this letter represented the position of certain shareholders, not an instruction from the corporation. The defendants admit that the corporation paid the plaintiff non-employee 1099 income even though other people who worked for the corporation as employees were paid W-2 income at least in part. The plaintiff never received any health or dental benefits from the Corporation. The defendants deny that any others who worked for the corporation at the time received any such benefits.

At some point prior to August 31, 1990 the plaintiff and the individual defendants agreed to rename the business "Caribbean Villas and Resorts Management, Inc." (Caribbean) and articles of incorporation for that company were filed with the Government of the United States Virgin Islands in September 1990. On September 26, 1990 Caribbean was issued a certificate of incorporation.

The defendants allege that from June 1993 until November 11, 1993 the plaintiff worked a regular schedule of three days per week, eight hours per day as a

reservation agent in Caribbean's Portland office. The plaintiff denies that he worked a "regular schedule" and asserts, instead, that his schedule was flexible and Caribbean never controlled the hours he worked. The defendants further allege that the plaintiff used Caribbean equipment while working in Caribbean's office. Although the plaintiff acknowledges that he used the equipment for a short time in 1993, he asserts that at all other times from 1990 through 1993 he used his own computer, phones, office equipment and office space for providing services to Caribbean.

The defendants also allege that in August 1993 the plaintiff attended a meeting of the Board in which it was agreed that Clark, as President of Caribbean, was to be paid base compensation equal to ten percent of the company revenues and Jannelle was to be paid base compensation equal to seven percent of company revenues. The plaintiff denies that he was present at that meeting. The salaries of Clark and Janelle are not paid in equal monthly installments but, rather, are partly deferred to the end of the year. There is a dispute as to whether the compensation paid to Clark, Jannelle and Hansen was reasonable and not excessive.[2]

---

[2] The court notes that the defendants argue that the Affidavit of the plaintiff's expert, John Gurley, is inadmissible because the opinions enumerated in the affidavit, including that "each individual Defendant's compensation is excessive," were previously undisclosed. According to the defendants, prior to the affidavit Gurley admitted that he could not offer the opinion that the individual defendants had actually received excessive compensation. The court does not agree that Gurley's affidavit is inadmissible. In his deposition, taken prior to the close of discovery, Gurley did in fact state his opinion that the defendants' compensation was excessive. See Gurley Dep. at 34:22-35:5. Although it is true that statements made in affidavits that are clearly

The last day that the plaintiff provided services to Caribbean as either an employee or a consultant was November 11, 1993. There is also a dispute as to whether the plaintiff voluntarily stopped working for Caribbean, or whether he was fired or forced out of the company. The plaintiff asserts that he stopped providing services to Caribbean because he had discovered that Clark had manipulated him into signing the company's organizational documents and deceived shareholders so that Clark would end up with more shares in the company despite paying less for his shares than any other shareholder. According to the plaintiff, he stopped providing services to Caribbean as a result of tensions that arose between the parties when the plaintiff confronted Clark with his concerns relating to these alleged deceptions.

The defendants allege that Caribbean needed the sales and marketing skills that the plaintiff possessed and his knowledge of the travel industry. The defendants further allege that, from the company's inception, the purchasers believed the plaintiff's experience and knowledge were of central importance. The plaintiff admits that Caribbean needed his skills in its formative years but denies that the defendants believed they needed his assistance as of 1993. The defendants

---

contradictory to prior testimony may not be used to avoid summary judgment, that is not the situation here. See *Zip Lube v. Coastal Sav. Bank*, 1998 ME 81, ¶ 10, 709 A.2d 733, 735. Gurley's affidavit testimony does not directly conflict with the testimony given in his deposition. Rather, Gurley reiterates his prior opinion and grounds it upon additional, more in-depth analysis. Further, any discrepancy or deviation from his deposition testimony is adequately explained. *See id.* The court, therefore, will consider Gurley's affidavit.

further allege that after the summer of 1999 until early 2003 the plaintiff never attended or asked to attend any meetings of shareholders or directors. The plaintiff maintains that he was never invited to shareholder or director meetings or, at least, was not given adequate notice of them.

In a letter to Caribbean, dated November 24, 1993, the plaintiff referenced the Shareholders Agreement and offered to sell his stock in conformity with the process it prescribed. In that letter the plaintiff referred to November 11, 1993 as "the last day of [his] employment." *See e.g.* Defs' S.M.F. ¶ 28 in Support of Defs' Mot. Summ. J. on Counts I & II of Counterclaim; Pl.'s Opp. S.M.F. ¶ 28. The parties disagree as to whether the plaintiff believed that he was obliged to follow the terms of the Shareholders Agreement in order to sell his stock. In particular, the plaintiff alleges that he attempted to follow the sale of stock procedures outlined in the Shareholders Agreement because he thought it was the easiest means of selling his shares without becoming embroiled in a dispute.

Over the course of several months, the parties corresponded regarding the sale and purchase of plaintiff's shares. In those letters, the defendants offered to have Clark appraise the shares individually or in conjunction with the appraisal procedures in Section 6 of the Shareholders Agreement. The plaintiff thereafter informed the defendants of his designated appraiser. The parties did not, however, select a third appraiser as called for in Section 6. The defendants also

communicated their belief that the plaintiff was in violation of Section 4 of the agreement because he had allegedly become "an employee or agent of [a] business engaged in a business similar to that of" Caribbean. The plaintiff denies that he was in violation of Section 4.[3]

In a letter to Clark, dated December 9, 2004, the plaintiff offered to sell his stock to Caribbean for $234,255.00 financed over six years, or for a single lump-sum payment of $60,000.00. The defendants claim that, prior to this offer, Clark had been negotiating with the plaintiff for Caribbean to acquire his stock for about $25,000.00, and that the plaintiff had offered to sell his stock for that amount. The plaintiff, however, asserts that Caribbean offered to purchase his stock for just over $10,000 and also "offered" to pay a loan for which the plaintiff was allegedly liable. The plaintiff denies that Caribbean loaned money to him. *Id.* The defendants claim Clark did not take the plaintiff's $234,255.00/$60,000.00 offer seriously, and point to a letter to the plaintiff, dated January 15, 1995, in which Clark stated: "If you know someone who will pay $234,255.00 or even $60,000.00 for your shares, we recommend that you take the money and our congratulations." The defendants claim that this "recommendation" was a joke. The plaintiff,

---

[3] Following his departure from Caribbean, the plaintiff went to work for East End Property Trust, a company that developed and managed vacation rental property on the island of St. John. The plaintiff asserts that the defendants had no intention of doing business on the part of St. John where East End was located. The plaintiff further alleges that the defendants informed him that his involvement with East End did not constitute improper competition with Caribbean. The defendants deny this assertion.

10

however, asserts that, when considered in the context of the entire letter, he reasonably relied on Clark's statement as an indication that the defendants did not consider him bound by the Agreement and that he could seek to sell his shares without regard to it.

Following years of failed negotiations, the plaintiff brought the instant action. In the amended complaint the plaintiff seeks: a declaratory judgment establishing his right to inspect Caribbean's books and records (Count I); injunctive relief enjoining Caribbean and its officers from further denying his right to inspect and ordering the company to produce the books and records, together with punitive damages (Count II); and damages for breach of fiduciary duty based on the defendants' refusal to allow him to inspect Caribbean's books and records (Count III). The plaintiff also seeks costs, punitive damages and a declaration that the Shareholder Agreement does not govern the sale of plaintiff's stock and does not have an impact on its value or transferability (Count IV); and damages for breach of fiduciary by the defendants for failing to pay him dividends and a pro-rata share of corporate profits, for failing to invite him to annual meetings, for failing to divulge requested financial information to him, for paying exorbitant salaries to Caribbean's officers and directors, and for failing to share corporate opportunities with him (Count V).

11

The defendants thereafter brought counterclaims against the plaintiff seeking: a declaration that the plaintiff is required to comply with the procedures for selling stock outlined in the Shareholders Agreement and specific performance of the agreement (Count I); a declaration that, in the event the Shareholders Agreement applies to the plaintiff, Caribbean has not lost its right to enforce the provision through waiver or failure to exercise its right, or, in the event that Caribbean is deemed to have waived or otherwise lost its right to enforce the agreement, a declaration that the plaintiff must offer his shares to defendants Clark and Hansen as called for in the Shareholders Agreement (Count II); a claim for rescission of the plaintiff's shares in whole or in part, as well as for damages, based on the plaintiff's alleged failure to provide Caribbean with agree-upon services in exchange for shares of stock (Count III); a claim for damages for breach of fiduciary duties owed to Caribbean based upon allegations that the plaintiff competed with Caribbean and attempted to procure and use Caribbean's client list for his personal advantage (Count IV); and, finally, a claim for damages based on the plaintiff's alleged default on a loan from the defendant Clark (Count V).

## DISCUSSION

Standard of Review

Summary judgment is proper if there is no genuine issue as to any material fact. *See Dickinson v. Clark,* 2001 ME 49, ¶ 4, 767 A.2d 303, 305. "A fact is

12

material if it has the potential to affect the outcome of the case under governing law." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655, n.3 (citing *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575). "[S]ummary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine issue of fact exists. The Court cannot decide an issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial." *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 6, 695 A.2d 1206, 1209 (quoting *Tallwood Land & Dev. Co. v. Botka*, 352 A.2d 753, 755 (Me. 1976)).

A.    Plaintiff's Motion – Count I of the Second Amended Complaint

In Count I the plaintiff seeks a declaratory judgment establishing his right to inspect Caribbean's books and records. The plaintiff argues that, even though Caribbean is a foreign corporation, he is entitled to inspect, pursuant to 13-A M.R.S.A. § 1216, because he is a shareholder and the corporation is authorized to do business in Maine.

The defendants counter that the plaintiff previously settled his claim under Count I when he consented to a prior order entered by this court on October 3, 2003. In that order, the plaintiff's accountant was given complete and unfettered access to Caribbean's books and records, but on condition that the information contained therein not be given to the plaintiff. The defendants claim that the order

13

and the plaintiff's consent to it foreclosed his ability to continue to assert any rights to inspect Caribbean's books. In the alternative, citing 13-A M.R.S.A. §§ 626 and 1216, the defendants argue that the plaintiff may only make a demand to inspect Caribbean's records for a "proper purpose," and any such request may be denied or restricted if inspection is sought for an improper purpose or if, on a prior occasion, the applicant had misused information or made an improper demand.[4] From this premise, the defendants assert that there are disputes of material fact as to whether the plaintiff seeks inspection for a proper purpose, whether he has previously misused information, or whether he has made an improper demand.

13-A M.R.S.A. § 626 (1981), *repealed by* P.L. 2003, ch. 640, § A-1 (effective July 1, 2003),[5] entitled "Right of shareholders to inspect corporate records," provides in relevant part:

> 2. Any ... shareholder shall have the right to inspect during normal business hours, for any proper purpose, the corporation's books and records of account, minutes of meetings, and list or record of shareholders, and to copy them or make extracts from them . . ..
> ...
> 5(A). If the corporation, or an officer or agent of the corporation, refuses to permit the inspection authorized by subsection 2, the shareholder demanding inspection may bring an action in the Superior

---

[4] The defendants also argue that section 1216 does not provide the plaintiff with a right of action because that claim is governed by the law of the U.S. Virgin Islands, not the law of Maine. Because the court has rejected this argument in the context of the defendants motion to dismiss Counts I and II, and concluded that section 1216 does apply to the plaintiff's claims, the court need not address this argument in the context of the instant motion.

[5] Section 626 has been repealed, effective July 1, 2003. However, because the complaint was filed on April 30, 2003, the repeal of the statute does not affect its operation in the instant action.

14

> Court ... for an order directing the corporation, its officers and agents to permit such inspection by the shareholder.

*Id.*

Section 626 further provides: "In such a proceeding, the burden shall be on the defendant to show, by a preponderance of the evidence, that the applicant sought such inspection for an improper purpose." 13-A M.R.S.A. § 626(5)(B). Pursuant to section 626, "[i]f a plaintiff is successful, the court may award him, as part of his costs, such reasonable expenses and attorney's fees as he incurred in bringing the proceeding; and if the court finds that the refusal to permit inspection was in bad faith, it shall also award, as punitive damages, a sum equal to 10% of the value of the shares owned by the applicant." 13-A M.R.S.A. § 626(5)(C).

13-A M.R.S.A. § 1216 (1981), *repealed by* P.L. 2003, ch. 640, § A-1 (effective July 1, 2003)[6] operates to make section 626 applicable to inspection requests made by shareholders of foreign corporations. That section provides, in relevant part:

> 1.    Every foreign corporation, authorized to do business in this State and actually keeping or maintaining within this State any books or records, shall afford to its shareholders the same right to inspect books and records kept or maintained in this State, including but not limited to records of shareholders, as is provided in this Act in the case of domestic corporations.

> 2.    If any such corporation, or its agents in this State, refuses to permit such inspection, the shareholder demanding inspection may

---

[6] This section was also repealed, effective July 1, 2003.

> bring an action in the same manner, and governed by the same procedure, as is provided in section 626.

*Id.*

Although this court did order that the plaintiff's accountant could have complete and unfettered access to Caribbean's books and records on condition that the plaintiff not be privy to the information, that Order did not represent a final decision on the merits of the plaintiff's claims in Count I, nor did it constitute a settlement of plaintiff's claims under 13-A M.R.S.A. §§ 626 & 1216.

Under section 626, the defendants bear the burden of proving, by a preponderance of the evidence, that the plaintiff sought inspection for an improper purpose. *See* 13-A M.R.S.A. § 626(5)(B). The defendants have not alleged any fact sufficient to meet that burden. Instead, they have merely asserted the reasons why they did not grant the plaintiff's request, including their belief that the plaintiff's motives were improper. *See e.g.* Defs' Additional S.M.F. ¶ 87. The defendants have also implied that the plaintiff's motives were improper by asserting that his request came at a time when he was allegedly working for a competitor. *See id.* at ¶ 84. However, they have not affirmatively alleged any fact that, if proven, would establish by a preponderance of the evidence that the plaintiff's request was made for an improper purpose.

The court concludes that the plaintiff is entitled to summary judgment on Count I declaring and establishing his right to inspect Caribbean's books and

16

records. However, that does not resolve the claims for attorney's fees and punitive damages in that count. Because an award of attorney's fees is discretionary, and because any award of punitive damages must rest on a finding of bad faith on the part of the defendants in making the refusal, the court concludes that there are issues of material fact relating to those issues that must be resolved at trial. *See* 13-A M.R.S.A. §§ 626((5)(C) & 1216.

B.    Defendants' Motion – Count I of the Counterclaim

Count I of the Counterclaim seeks a declaration that the plaintiff is bound by Section 7 of the Shareholders Agreement and that he must, therefore, offer his shares to the remaining shareholders and comply with the Agreement's provisions regarding the appraisal process. The defendants argue that the plaintiff was a "shareholder employee" of Caribbean and is therefore required to follow the procedures set out in Section 7 for the sale of his stock. The plaintiff counters that he is not bound by Section 7 because he was an independent contractor. The defendants respond that the term "employee" in the Shareholders Agreement is ambiguous and the court may look to the meaning attached by the parties to that word when interpreting it. Thus, they assert, the circumstances surrounding the formation of the Shareholders Agreement and the interactions of the parties support a conclusion that the parties considered the plaintiff to be an employee as that term is used in the agreement. The court disagrees.

In this case, the Shareholders Agreement simply uses the term "employee" without attempting to define its meaning. Its meaning, however, is well settled under the common law and, as used in the Shareholders Agreement, is unambiguous. *See Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992). "The term 'employee,' . . . is a term of art with a distinct meaning at common law." *Mortgage Consultants v. Mahaney*, 655 N.E.2d 493, 495 (IN 1995). Absent language intended to define the term differently, it is typically used to "describe the conventional master-servant relationship as understood by common-law agency doctrine." *Darden*, 503 U.S. at 322. Because there is no language in the contract rendering the term ambiguous, therefore, the court will not consider extrinsic evidence relating to the parties' intended meaning. *See Sunshine Shopping Ctr., Inc. v. Kmart Corp.*, 85 F. Supp. 2d 537, 540 (D. V.I. 2000) (stating that when a court "determines that the written terms of the contract are unambiguous, then the Court will interpret the contract as a matter of law"). Instead, the court will apply the test in RESTATEMENT (SECOND) OF AGENCY § 220 (1958) for determining the meaning of "employee" in this case. *See Fountain v. East End Watersports, Ltd.*, 2002 U.S. Dist. LEXIS 18020 (D. V.I. June 14, 2002) (applying section 220).[7]

---

[7] Under section 220:

Under the agency principles outlined in section 220, there is a clear

distinction between an "employee" and an "independent contractor." *See id.*

Indeed,

> [t]he legal distinction between an employee and an independent contractor is so well established as to require little, if any, discussion. The characteristics of the former relationship is that the master not only controls the result of the work but has the right to direct the way in which it shall be done, whereas the characteristic of the latter is that

---

(1) A servant is a person employed to perform services in the affairs of another and who with respect to the physical conduct in the performance of the services is subject to the other's control or right to control.

(2) In determining whether one acting for another is a servant or an independent contractor, the following matters of fact, among others, are considered:

    (a) the extent of control which, by the agreement, the master may exercise over the details of the work;

    (b) whether or not the one employed is engaged in a distinct occupation or business;

    (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;

    (d) the skill required in the particular occupation;

    (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

    (f) the length of time for which the person is employed;

    (g) the method of payment, whether by the time or by the job;

    (h) whether or not the work is a part of the regular business of the employer;

    (i) whether or not the parties believe they are creating the relation of master and servant; and
    (j) whether the principal is or is not in business.

*Id.*

the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result.

*McCarthy v. Recordex Serv.*, 80 F.3d 842, 843 (D. V.I. 1996) (quoting *Feller v. New Amsterdam Cas. Co.*, 363 Pa. 483, 70 A.2d 299, 300 (1950)). *See also* RESTATEMENT (SECOND) OF AGENCY § 220 cmt. e.

Because Section 7 unambiguously restricts *employee* shareholders' ability to sell their shares, the plaintiff is not obligated to follow the procedures outlined in Section 7 if he was an independent contractor. However, there is a dispute of material fact as to whether the plaintiff was an "employee" of Caribbean. Accordingly, summary judgment would not be appropriate.

C.    Plaintiff's Motion – Count I of the Counterclaim

The plaintiff also moves for summary judgment on Count I of the Counterclaim. He argues that he is not obligated to offer his shares to the remaining shareholders because the defendants have waived, or otherwise relinquished, their right to enforce the agreement.[8]

According to the plaintiff, the January 15, 1995 letter from Caribbean, through Clark, evidenced a clear and unequivocal waiver by Caribbean of its right to buy the plaintiff out pursuant to the Shareholders Agreement – in particular, the

---

[8] The plaintiff also argues that summary judgment is appropriate because he was an independent contractor under the Shareholders Agreement and therefore not bound to follow the procedures for selling his stock outlined in Section 7. Because the court has concluded that there is an issue of material fact regarding the nature of the work plaintiff provided to Caribbean, the court rejects the plaintiff's arguments on that issue.

statement by Caribbean that the plaintiff should "take the money and our congratulations" if he could find a buyer willing to pay $234,255 or $60,000.00. In the alternative, the plaintiff argues that the letter is evidence that the defendants failed to exercise their rights, thereby freeing the plaintiff from any potential obligation to comply with Section 7.

Finally, the plaintiff claims that, in the event the defendants have not waived or otherwise relinquished their rights under the Shareholders Agreement, they should be estopped from asserting those rights because the letter was materially misleading and he reasonably relied upon it. In support of this argument, the plaintiff cites *Sunshine Shopping Center, Inc.*, 85 F. Supp. 2d at 543, in which the federal district court for the Virgin Islands explained that "[w]aiver requires a 'clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part . . . .'" *Id.* (quoting *West Jersey Title & Guaranty Co. v. Industrial Trust Co.*, 141 A.2d 782 (1958)). However, there is a genuine issue of material fact as to whether the letter constitutes a clear, unequivocal and decisive waiver by Caribbean of its rights under the agreement.

Further, the court is similarly unable to conclude that defendants relinquished their rights under the Shareholders Agreement either by virtue of the letter or by failing to follow the Agreement's procedures. Because there is a dispute of material fact as to whether and to what extent the parties each attempted

to follow the appraisal process outlined in the agreement, summary judgment on the plaintiff's motion cannot be granted.

D.  Plaintiff's Motion – Count IV of the Second Amended Complaint

Count IV of the second amended complaint seeks a declaration that plaintiff is not bound by the sale-of-stock provisions in the Shareholders Agreement. Because the disposition of that count is dependent upon a determination as to whether plaintiff was an employee or an independent contractor and whether Caribbean has waived its rights under that agreement, the plaintiff is not entitled to summary judgment on Count IV.

E.  Parties' Motions – Count II of the Counterclaim

The parties have each moved for summary judgment on Count II of the counterclaim which seeks a declaration that, if Section 7 applies to the plaintiff and Caribbean has waived or otherwise relinquished its right to enforce the Agreement, the plaintiff must offer his shares to Clark and Hansen.

The plaintiff responds that Clark and Hansen are bound by Caribbean's alleged waiver of its rights under the Shareholders Agreement. Plaintiff further argues that Section 7 of the Agreement does not contemplate an offer of his shares to other shareholders and that Section 6 only requires him to do so prior to making an offer to the general public. Because he has not yet attempted to sell his shares

to the general public, the plaintiff argues that he is not obligated under the Agreement to offer his shares to Clark and Hansen.

After careful consideration of the arguments of the parties and of the factual allegations in the record, the court declines to grant summary judgment to either party. There is a factual dispute regarding the applicability of Section 7 to the plaintiff, whether sections 6 and 7 should be read together, and the circumstances under which the plaintiff may be required to offer his shares to other shareholders in the company. *See e.g.* Pl's Supp. S.M.F. ¶ 9; and Defs' Opp. S.M.F. ¶ 9. As previously noted, there is also a dispute as to whether the corporation has waived its rights under the Agreement and whether any such waiver bound Clark and Hansen individually. Accordingly, the court denies both the plaintiff's and the defendants' Motions for Summary Judgment on Count II of the Counterclaim.

F.    Plaintiff's Motion – Count III of the Counterclaim

Count III of the counterclaim alleges that the plaintiff breached a contract to provide Caribbean with services in consideration for his shares of stock in the corporation, and seeks damages and an order rescinding plaintiff's shares in whole or in part. The plaintiff asserts that the claim is barred by the statute of limitations that because the defendants failed to assert this breach of contract claim within six years, as required by 14 M.R.S.A. § 752 (2003). The plaintiff further argues that the breach of contract count is barred by the statute of frauds because any

agreement under which he allegedly agreed to provide services had a term of more than one year and was not in writing.

1.    *Statute of Limitations*

The defendants contend that their breach of contract claim is timely pursuant to 14 M.R.S.A. § 865 (2003) because it arises out of the same action or occurrence that is the subject of the plaintiff's claim.

Under 14 M.R.S.A. § 752, a claim for breach of contract must be brought within six years after the cause of action accrues. However, a counterclaim that arises "out of the transaction or occurrence that is the subject matter of the plaintiff's claim to the extent of the demand in the plaintiff's claim" is timely so long as plaintiff's claims were timely filed. 14 M.R.S.A. § 865. Under section 865, therefore, "[c]laims that might have been pleaded in recoupment at common law are ... exempt from the statute of limitations." 1 Field, McKusick & Wroth, *Maine Civil Practice* § 13.8a at 279. *See also* M.R. Civ. P. 13.

Here, the plaintiff asserts, in his Second Amended Complaint, that the defendants have denied him financial benefits to which he is entitled by virtue of his ownership of Caribbean stock. Count III of the Counterclaim is based on an alleged breach of the plaintiff's duty to perform services for the corporation in return for some of those shares. Accordingly, Count III is sufficiently related to the plaintiff's claims to be timely under section 865 insofar as it effectively seeks

"recoupment" up to the amount of any damages recovered by plaintiff. *See* 14 M.R.S.A. § 865. *See also Morse Bros. Inc. v. Mason*, 2001 ME 5, ¶ 5, 764 A.2d 267, 269 (explaining that, in the context of M.R. Civ. P. 13, "whether the facts of a controversy constitute a 'transaction or occurrence,'" turns on "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage"). *Id.* (citations omitted).

However, it is timely only insofar as it is asserted as a defensive reduction of any liability owed to the plaintiff. *See* 14 M.R.S.A. § 865; and Field, *Maine Civil Practice* § 13.8a. Further, because a claim that is barred by the statute of frauds fails as a matter of law, no matter how timely it is brought, the court must now consider whether Count III is barred under the statute of frauds. *See* 33 M.R.S.A. § 51 (1999); and 28 V.I. CODE ANN. § 244. *See also Popanz v. Peregrine Corp.*, 1998 ME 95, 710 A.2d 250.

### 2. *Statute of Frauds*

As a preliminary matter, the defendants object to this defense because the plaintiff failed to raise it at the pleading stage. Defs' Opp. to Pl's Mot. Summ. J. at 10 (citing M.R. Civ. P. 8(c); *and Inniss v. Methot Buick-Opel, Inc.*, 506 A.2d 212, 218 (Me. 1986)). Typically, a party's failure to plead an affirmative defense results in a waiver of that defense. *See Inniss*, 506 A.2d at 218. However, the

25

plaintiff claims that he did not have notice, until after the deadline to amend the pleadings had passed, that the basis for the defendants' claim in Count III was his alleged promise to "be a contributing partner for four or five years in exchange for having Caribbean pay a promissory note." For that reason, the plaintiff asserts that he could not have timely pled the statute of frauds and now seeks leave from the court to amend his answer in order to so plead. The court agrees. Where, as here, there is an absence of discernable prejudice to the opposing party, leave should be given freely to amend pleadings. M.R. Civ. P. 15(b). Accordingly, the court grants the plaintiff's motion to amend and will entertain his statute of frauds defense.

Under Maine's statute of frauds, no action involving a contract for services unable to be performed within one year may be maintained unless the contract is in writing and signed by the party to be charged. 33 M.R.S.A. § 51. The statute of frauds in the Virgin Islands similarly requires that such contracts be in writing.[9] *See* 28 V.I. CODE ANN. § 244. The defendants concede that the alleged agreement under which the plaintiff was allegedly obligated to perform specific services for Caribbean had a term of four or five years. *See* Supp. S.M.F. ¶ 41; Opp. S.M.F. ¶ 41.

---

[9] Although the plaintiff has raised his statute of frauds defense under Maine law, the court notes that Virgin Island law applies to this issue. *See Computer Sys. of Am., Inc. v. Int'l Bus. Machines*, 795 F.2d 1086 (1st Cir. 1986) (explaining that when, under traditional choice of law principles, the law substantive law of another state governs, courts apply the foreign state's statute of frauds.).

The defendants have not produced, and the record does not otherwise disclose, any such agreement in writing. In spite of this, the defendants claim that the alleged contract is enforceable because the plaintiff has waived his statute of frauds defense by virtue of part performance. Defs' Opp. to Pl's Mot. Summ. J. at 11 (quoting *Smith v. Robinson*, 44 V.I. 56, 61 n.4 (2001) ("full, or even partial, performance 'takes a case out of the statute of frauds because it would be inequitable to allow a party to invest time and labor upon the faith of a contract that did not exist.'") (citations omitted)).

Courts in the Virgin Islands recognize the part performance exception to the statute of frauds. *Fountain Valley Corp. v. Wells*, 1983 U.S. Dist. LEXIS 15272 (D. V.I. July 22, 1983). "The true basis of the doctrine of part performance ... is that it would be a fraud upon the plaintiff if the defendant were permitted to escape performance of his part of the oral agreement after he has permitted the plaintiff to perform in reliance upon the agreement." *Henderson v. Resevic*, 262 F. Supp. 36, 38 (D. V.I. 1967)(quoting 49 AmJur Statute of Frauds § 421). "To enforce a verbal agreement on the grounds of part performance, the evidence presented must be clear and definite in both the terms and subject matter of the contract." *In re Estate of Pitterson*, 40 V.I. 13, 17-18 (1998). In this case,the defendant "must show such acts and conduct of [the plaintiff] which amount to a representation that the [plaintiff] proposed to honor the oral agreement and not avail himself to the Statute

of Frauds in order to escape its performance." *Id.* (citations omitted). "Furthermore, [the defendant] must have relied on this representation, either in performance or pursuance of [its] contract, so that [it] would incur an unjust and unconscientious injury and loss if the [plaintiff] is allowed to rely on the statute." *Id.* Because the court concludes that, in the instant case, there are disputes of material fact relating to these issues[10] summary judgment cannot be granted on Count III of the Counterclaim.

G.    Plaintiff's Motion – Count IV of the Counterclaim

Count IV of the Counterclaim alleges that the plaintiff breached his fiduciary duties to Caribbean by competing with the corporation and attempting to procure and use its client list for his personal advantage. The plaintiff asserts that the evidence does not support a claim that he competed with Caribbean, that Caribbean was in fact injured by his involvement with TTC, or that he could have or would have caused Caribbean harm had he procured its client list.

The court agrees with Caribbean that there are issues of material fact relating to Count IV sufficient to withstand summary judgment. Caribbean maintains that while the Shareholder's Agreement contemplated transactions that caused

---

[10] The court notes that the plaintiff argues that the part performance doctrine does not apply when damages are sought. *See* Pl.'s Reply at 4. *See also Arnold & Assocs., Inc. v. Misys Healthcare Sys.,* 275 F. Supp. 2d 1013, 1022-1023 (D. AZ 2003). However, because Count III is to be treated in the manner of a recoupment, the court concludes that the part performance doctrine may be applied in this case. *See Fed. Deposit Ins. Corp. v. Steve Notis,* 602 A.2d 1164, 1166 (Me. 1992).

28

commissions to be paid to both TCC and Caribbean, that agreement did not contemplate or authorize the plaintiff to wholly divert opportunities to TCC that came to the plaintiff by virtue of his involvement with Caribbean. Caribbean further alleges that the plaintiff misused its advertising dollars in order to benefit TCC at the expense of Caribbean. These disputed facts are material and sufficient to preclude summary judgment.

H.    Defendants' Motion – Count V of the Second Amended Complaint

In Count V, the plaintiff claims that the defendants Clark, Jannelle and Hansen have breached fiduciary duties owed to the plaintiff. In their motion for summary judgment on Count V, the defendants argue that the law of the Virgin Islands should apply to this claim. The defendants contend that, under applicable law, in order for the plaintiff to prevail on a direct, rather than a derivative, cause of action for "oppression," he may not rest simply on an allegation that the defendants paid themselves excessive compensation. Instead, the defendants maintain that in order to state a *prima facie* case for oppression, the plaintiff must also show that wrongful conduct of the majority has substantially defeated expectations of the plaintiff that were objectively reasonable. The defendants further contend that in order for plaintiff to prove that his expectations were frustrated, he "must prove that ... the frustration was without fault of the plaintiff and was in large part beyond his control." Defs' Mot. for Summ. J. on Count V at

29

9 (citing *Meiselman v. Meiselman*, 307 S.E.3d 551, 564 (N.C. 1983)). Because they contend that the plaintiff has failed to meet his burden, the defendants seek summary judgment on Count V.

The plaintiff, however, argues that the defendants have siphoned off profits by paying excessive salaries to the individual shareholder defendants. He maintains, further, that his expectation of receiving dividends was reasonable and consistent with the expectations of the other shareholders. The defendants' alleged failure to issue dividends to the plaintiff, as well as their alleged attempts to disguise dividends as excessive compensation has, the plaintiff contends, frustrated his reasonable expectations.

1. *Choice of Law*

As a threshold matter, the parties dispute whether the substantive law of the Virgin Islands or of Maine should be applied to Count V. Under the Restatement, issues relating to the rights and liabilities of a corporation are generally determined by the law of the state of incorporation. *See* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 302 (1971). Given that Caribbean is incorporated in the Virgin Islands, the defendants argue that the law of the Virgin Islands should be applied in this case. The plaintiff, however, argues that because Count V alleges breach of fiduciary duties against individual shareholders, rather than the corporation, this

court must apply the choice of law provisions contained section 145 of Restatement, under which the plaintiff maintains, Maine's law would apply.

The Law Court has expressly adopted section 145 of the Restatement. *See Flaherty v. Allstate Ins. Co.*, 2003 ME 72, ¶ 16, 822 A.2d 1159, 1165. That section specifically addresses choice of law principles in the more general context of tort claims:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> > (a) the place where the injury occurred,
> >
> > (b) the place where the conduct causing the injury occurred,
> >
> > (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> >
> > (d) the place where the relationship, if any, between the parties is centered.

*Id.* In turn, section 6 provides in pertinent part:

> (2) The factors relevant to the choice of the applicable rule of law include
>
> > (a) the needs of the interstate and international systems,
> >
> > (b) the relevant policies of the forum,
> >
> > (c) the relevant policies of other interested states and the

31

relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Flaherty*, 2003 ME 72, ¶ 16, 822 A.2d at 1165 (quoting RESTATEMENT (SECOND) CONFLICT OF LAWS § 145 (1971)).

Although section 145 is a well-established component of Maine's choice of law rules, it does not contemplate many of the unique issues that relate to corporate entities and governance. Sections 306 and 309 of the Restatement, however, do contemplate many of those corporate realities and, although Maine courts have not explicitly adopted those sections , they provide important guidance on the choice of law issues involved in this case.

Under section 306, which deals with the liability of majority shareholders:

> The obligations owed by a majority shareholder to the corporation and to the minority shareholders will be determined by the local law of the state of incorporation, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the parties and the corporation, in which event the local law of the other state will be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 306. Under section 309,

The local law of the state of incorporation will be applied to determine the existence and extent of a director's or officer's liability to the corporation, its creditors and shareholders, except where, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the parties and the transaction, in which event the local law of the other state will be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 309.

Based on sections 6, 145, 302, 306, and 309, consideration of the state of incorporation is particularly important in a choice of law analysis involving a foreign corporation and its officers. Indeed, the comments to sections 306 and 309 explain that application of the law of a state other than that of incorporation is atypical. *See e.g.* RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 309 cmt. c ("The local law rule of a state other than the state of incorporation is most likely to be applied in a situation where this rule embodies an important policy of the other state and where the corporation has little contact with the state of its incorporation."). *See also* § 306, cmt. c ("The local law of some state other than the state of incorporation is most likely to be applied in a situation where the corporation does all, or nearly all, of its business and has most of its shareholders in that other state and has little contact, apart from the fact of its incorporation, with the state of incorporation."); and *Cacho v. Prince of Fundy Cruises, Ltd.,* 1998 ME 249, ¶ 16, 722 A.2d 349, 352 (explaining that the place of incorporation is "a fact that is 'significant' in a choice of law analysis.") Here, although

Caribbean does business in Maine and its shareholders are residents of this State, the corporation is nevertheless incorporated in the Virgin Islands and, based on the facts before the court, has significant contact with the Virgin Islands.

2. *The "Sounder Rule"*

Based on the foregoing, the court will apply the substantive law of the Virgin Islands to Count V. This determination, however, is not dispositive of the parties' other disputes relating to Count V. The defendants maintain, and the plaintiff does not refute, that there is no local Virgin Island law addressing a direct cause of action by a shareholder against other individual shareholders. In the Virgin Islands, courts follow the Restatement when there is no applicable local law to the contrary. *See* 1 V.I. CODE ANN. § 4. It appears, however, that the Restatement does not address such a direct cause of action either. Where the Restatements are silent and a split of authority exists in the common law, a court seeking to apply Virgin Islands law should select what it deems to be the "sounder rule." *See* Defs' Mot. Summ. J. at 4 (citing *Polius v. Clark Equip. Co.*, 802 F.2d 75, 77 (3d Cir. 1986)).

Arguing that it is the "sounder rule," the defendants urge this court to consider the factors contained in their proposed three pronged test for determining whether the defendants have breached their fiduciary duties to the plaintiff namely: (1) the quality of the defendants' conduct in order to determine whether it was

oppressive or prejudicial to the plaintiff; (2) whether any wrongful conduct on the part of the defendants substantially defeated the plaintiff's expectations and, further, the nature of the plaintiff's expectations and whether they were reasonable; and (3) if the plaintiff's reasonable expectations have been frustrated, the reason that has occurred.

This proposed standard is an amalgam of different standards used by courts around the country to determine whether a minority shareholder has been "oppressed" or "frozen out" by majority shareholders. *See Kiriakides v. Atlas Food Sys. & Servs., Inc.*, 541 S.E.2d 257 (S.C. 2001) (explaining the two, traditionally distinct, standards applied by courts to determine the existence of "oppression"). Typically, the adoption of one or the other standard (either the "quality of the conduct of the majority" or the "reasonable expectations of the shareholder" standards) depends upon an interpretation of the meaning of the word "oppression," as used in a state statute. *See id.*; and 2 O'NEAL & THOMPSON'S CLOSE CORPORATIONS AND LLCS: LAW AND PRACTICE § 9:27 & 9:28.

Depending on the wording of a particular state statute, the focus of an inquiry into alleged "oppression" may substantially focus on the conduct of the majority or on the expectations of the minority. *See Kiriakides*, 541 S.E.2d at 264-66. Additionally, some courts, particularly in the context of close corporations, have considered both the conduct of the majority and the expectations of the

minority in evaluating whether a minority shareholder has been "oppressed" or "frozen out." *See e.g. id.*

After a review of case law from other jurisdictions addressing various "oppression" standards, the court is persuaded that, at least in the context of a close corporation such as Caribbean, a standard like that proposed by the defendants is appropriate. In the court's view, a consideration both of the conduct of the majority as well as the expectations of the minority, is instructive. The court notes, however, that although it will consider the expectations of the plaintiff in its analysis, in the court's view the focus of the inquiry in a breach of fiduciary duty case should largely be on the conduct of the majority to determine whether it is wrongful.

Having substantially adopted the standard proposed by defendant, the court must now consider whether the undisputed facts before it warrant summary judgment in defendants' favor. Viewing the evidence, as it must, in the light most favorable to the plaintiff, the court cannot conclude that, as a matter of law, that the plaintiff may not maintain an action for breach of fiduciary duty. With respect to the first prong of the test proposed by defendants and substantially adopted by this court, there are issues of material fact relating to whether the defendants' conduct was wrongful or oppressive. Some examples of "common freeze out techniques include the termination of a minority shareholder's employment, the refusal to

declare dividends, the removal of a minority shareholder from a position of management, and the siphoning off of corporate earnings through high compensation to the majority shareholder. Often, these tactics are used in combination." *Kiriakides*, 541 S.E.2d at 267. In this case, there are issues of material fact as to whether, for example, the defendants have paid themselves excessive compensation, refused to declare dividends, and failed to invite the plaintiff to shareholder meetings. In addition, there are issues of material fact relating to the plaintiff's expectations, to what degree those expectations were frustrated, and whether the plaintiff's own conduct was wrongful. Accordingly, the defendants' Motion for Summary Judgment on Count V of the Second Amended Complaint must be denied.

I.     Plaintiff's Motion – Count V of the Counterclaim

Count V of the Counterclaim alleges that the plaintiff breached his obligation to repay a personal loan from the defendant Clark. In his motion for summary judgment on this count, the plaintiff claims that that count is barred by the statute of limitations. 14 M.R.S.A. § 752. As previously discussed, a claim for breach of contract must be brought within six years after the cause of action accrues. *See* 14 M.R.S.A. § 752.

Unlike the breach of contract claim in Count III, the contract breach alleged in Count V of the Counterclaim is not sufficiently related to the plaintiff's claims

to be saved from the statute of limitations by action of 14 M.R.S.A. § 865. The loan the plaintiff is alleged to have defaulted on was made no later than 1993. Clark instituted this action on that alleged default on July 11, 2003. However, in spite of section 752's apparent bar, Clark argues that because he allegedly was not amenable to suit in Maine, as required under Maine's long-arm statute, 14 M.R.S.A. § 704-A, the statute of limitations was tolled until July 1997, six years before the Counterclaim was filed.

> If a person is out of the State when a cause of action accrues against him, the action may be commenced within the time limited therefor[e] after he comes into the State. If a person is absent from and resides out of the State, after a cause of action has accrued against him, the time of his absence from the State shall not be taken as a part of the time limited for the commencement of the action.

14 M.R.S.A. § 866.

As the defendants correctly point out, the Law Court has previously discussed the implications that Maine's long-arm statute, which confers *in personam* jurisdiction on Maine courts, has on the tolling of the statute of limitations. In *Patten v. Milam*, 480 A.2d 774 (Me. 1984), the Law Court acknowledged the "substantial body of law in other jurisdictions which supports the proposition that notwithstanding a defendant's absence from the state, the limitations period is not tolled if he remains amenable to service of process under modern 'long-arm' extensions of *in personam* jurisdiction." *Id.* at 777. The Court considered, but did not decide, whether the tolling "provision applies in cases

38

where the defendant's whereabouts are known, such that he or she is clearly amenable to service under Maine's 'long-arm' statute." *Siegmund v. Shapland*, 2004 U.S. Dist. LEXIS 2934 (D. Me. Feb. 26, 2004) (discussing *Patten*, 480 A.2d 774).

Although the Law Court does not appear to have decided the question, the federal district court in Maine has concluded that the Law Court would likely follow the majority rule. In *Siegmund*, 2004 U.S. Dist. LEXIS 2934, Judge Hornby, referring to the decision in *Patten*, concluded that where a non-resident defendant travels to Maine on several occasions and there is evidence that the plaintiff knew where the defendant was, that defendant is amenable to service. *See id.*

In the instant case, although the plaintiff is a resident of Massachusetts, there is ample record evidence to support a finding that he was amenable to service before 1997, as Clark suggests. Clark concedes that the plaintiff traveled to Maine three days per week to work in Caribbean's Portland office. Opp. S.M.F. ¶ 58. The fact that the plaintiff was a resident of Massachusetts does not outweigh the fact that he had significant, on-going contact with the State of Maine nor the ample evidence that Clark knew where the plaintiff was. Based on the facts presented, section 866 has not served to toll the statute of limitations and Clark's breach of

39

contract claim is thus time-barred under section 752. Accordingly, the plaintiff's is entitled to summary judgment on Count V of the counterclaim.

## DECISION

Pursuant to Rule 79(a) M.R. Civ. P., the Clerk is directed to enter this Order on the Civil Docket by a notation incorporating it by reference, and the entry is

A. Plaintiff's Motion to Amend the Amend his Answer to the Counterclaims is GRANTED.

B. As to Plaintiff's Motion for Summary Judgment on Count I of the Second Amended Complaint,

(1) It is adjudged and declared that so much of the motion that seeks a ·declaration that Plaintiff has the right to inspect the books and records of Defendant Caribbean Villas & Resorts pursuant to 13-A M.R.S.A. § 1216 is GRANTED; and

(2) So much of the motion that seeks an award of attorneys' fees and punitive damages is DENIED;

C. Plaintiff's Motion for Summary Judgment on Count IV of the Second Amended Complaint is DENIED;

D. Plaintiff's Motion for Summary Judgment on Counts I, II, III, IV and V of the Counterclaim are DENIED;

E. Defendants' Motion for Summary Judgment on Count V of the Second Amended Complaint is DENIED;

F. Defendants' Motion for Summary Judgment on Counts I and II of the Counterclaim are DENIED.

Dated: July 25, 2005

_____
Justice, Superior Court

40

PAUL DRISCOLL ESQ
PO BOX 4600
PORTLAND ME 04112



DAVID SOLEY ESQ
PO BOX 9729
PORTLAND ME 04104